## MURPHY et al. v. NEW YORK CENT. R. CO.

(Supreme Court, Appellate Division, First Department. December 3, 1915.)

1. CARRIERS ⬩18—PUBLIC SERVICE COMMISSION—ORDERS—CONCLUSIVENESS.

Public Service Commission Law (Consol. Laws, c. 48) § 28, requires common carriers to file with the Commission schedules of rates and regulations. Section 29 provides that no change shall be made in rates, except upon 30 days' notice or order of the Commission. Section 33 prohibits transportation unless rates are filed. Section 34 prohibits transportation at rates lower than those in the schedules filed. Section 49 provides that on motion or complaint the Commission shall determine whether rates are reasonable, and the carrier shall thereafter obey the orders of the Commission with respect to the rates to be charged. Plaintiffs complained of alleged overcharges, and the Commission ordered their refund. *Held*, that the order was not binding on the courts as a judgment; no power being granted the Commission to make such an order.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. ⬩18.]

2. COMMERCE ⬩88—INTERSTATE COMMERCE COMMISSION—ORDERS—CONCLUSIVENESS.

Although the Interstate Commerce Commission ruled track charges for delay in unloading during inclement weather to be unjust discrimination, that ruling is not conclusive upon intrastate shipments, where it does not appear that there was actual discrimination in the charges exacted.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. ⬩88.]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Edward D. Murphy and another against the New York Central Railroad Company. From a judgment for plaintiffs, entered by direction of the court without a jury, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William Mann, of New York City, for appellant.
Herman Hoffman, of New York City, for respondents.

SCOTT, J. This is an action brought to recover certain amounts paid by plaintiffs to defendant as "track storage" charges on cars transported by defendant from points within the state of New York to Melrose Junction in New York City. The facts are undisputed, and the only question of law in the case is as to the binding effect, as an adjudication, of a certain order or resolution of the Public Service Commission, Second Department.

The facts as shown by the pleadings and the stipulation are that during the times mentioned in the complaint the plaintiffs were engaged in business as receivers and shippers of hay, straw, grain, and feed at 788 Morris avenue, New York City, and the defendant was and now is a common carrier engaged in intrastate commerce, subject to the provisions of the Public Service Commissions Law, and had

filed with the said Public Service Commission schedules showing its rates, fares, and charges for the transportation of property, and terminal charges, and rules and regulations affecting said rates; that the said schedules provided among other things that a consignee of freight shall have 48 hours from the first 7 a. m. after notice of arrival and placement of a car at destination "free time" in which to unload said car; that if the car is detained beyond the said free time a charge of $1 per day or fraction thereof, called a "demurrage" charge, is made to encourage a reasonably prompt release of the car, and another charge called "track storage" is made, at certain places where track space is comparatively limited, to facilitate the clearance of the delivery or switch tracks, and for use of the space occupied by the car.

The charge made for demurrage is $1 per car per day. The track storage charge prior to August 15, 1908, was $1 per car for the first day, $2 for the second, $3 for the third, and $4 for each succeeding day. Since August 15, 1908, the track storage charge has been $1 per day for the first two days after the free time expired, and $2 per day for each succeeding day. The demurrage schedules further provided that the defendant would refund to the consignee of property the "demurrage" charges collected by it when shipments were held in the cars because of the impracticability of unloading, under the following conditions, if they occurred within the free time specified:

When the condition of the weather during the prescribed free time is such as to make it impossible to employ men or teams in unloading cars without serious injury to freight. When shipments are frozen, so as to prevent unloading during the prescribed free time, or when because of high water or snowdrifts it is impossible to get to cars for unloading during the prescribed free time. There was no similar provision in the "track storage" schedules, and no provision in said schedules providing for the remission of track storage charges when weather conditions were such as to interfere with the loading or unloading of the property by the consignee.

Between November 1, 1907, and May 20, 1910, plaintiffs received at defendant's Melrose Junction station, New York City, a number of consignments of freight which originated and terminated within the state of New York, and paid thereon track storage charges amounting to $178, which are claimed to have been unlawful and excessive, for the reason that said charges accrued on days when the weather conditions were such as to interfere with the unloading of the property. The demurrage charges which were paid by the plaintiffs to the defendant, and which plaintiffs claimed were excessive by reason of weather conditions, were refunded by the defendant to the plaintiffs, but defendant refused to refund the track storage charges which accrued under these conditions. In May, 1911, the plaintiffs filed a complaint with the Public Service Commission, Second District, claiming that said track storage charges were unjust and unreasonable, and proceedings were thereafter had before said Public Service Commission which resulted in a resolution of the Commission to the effect that the plaintiffs were entitled to recover the amount of said charges from the defendant.

On or about August 1, 1911, the defendant modified its track storage schedules, and since that time those schedules have contained a provision similar to the one in the demurrage schedules providing for the refund of demurrage charges which accrue when weather conditions prevent unloading. The Public Service Commission, Second Department, concluded that the "track storage" charges exacted by defendant and included in its filed schedule of tariffs and charges, in so far as the same applied to days upon which, owing to weather conditions, it was impossible or impracticable to unload, were unreasonable. To this finding the defendant makes no objection, and has amended its schedule of rates, tariffs, and charges to conform thereto. In addition to this finding the Commission adopted a resolution, which for the purposes of this appeal is assumed to be equivalent to an order, in the following terms:

"Resolved, that complainants, Murphy Bros., are entitled to recover from respondent, the New York Central & Hudson River Railroad Company, the aggregate sum of $178, with varying amounts of interest computed at the rate of 6 per cent. per annum as hereinafter stated, for and on account of exaction by respondent of unjust and unreasonable track storage charges applied to carloads of freight delivered to complainants at Melrose Junction."

The amounts thus held to be repayable to plaintiffs covered "track storage" charges from January 11, 1907, to June 14, 1911, all of which had been exacted before the determination by said Public Service Commission that said "track charges" were unreasonable. Judgment was rendered against defendants upon the specific ground that the resolution or order of the Public Service Commission "is in effect a finding of an unjust discrimination against the plaintiffs, and until reversed or annulled is binding upon the defendant in this action."

The theory upon which the judgment proceeded is, as indicated by the learned justice who rendered it, that inasmuch as the Interstate Commerce Commission had held "track charges" exacted under like circumstances upon cars engaged in interstate commerce to be unreasonable and unlawful, the exaction of such charges upon cars used in intrastate commerce would constitute unjust discrimination against shippers by the latter class of cars. We are unable to follow this reasoning. The charges sought to be recovered, and for which judgment has been rendered, cover the period from January, 1907, to June, 1911. There is absolutely nothing in the case to show that defendant did not, during the period mentioned, exact precisely the same "track charges" from cars employed in interstate commerce. From the statement of facts in N. Y. Central & Hudson River R. R. Co. v. Murphy, 225 Fed. 407, —— C. C. A. —— (Law Journal Sept. 15, 1915), which plaintiffs cite and on which they rely to sustain this judgment, it appears that the order of the Interstate Commerce Commission declaring the exaction of track charges unreasonable was not made until December, 1911, so that it may be reasonably inferred that for the period covered by the refund directed by the judgment appealed from the defendant exacted the same track charges from cars engaged in interstate and intrastate commerce. The plaintiffs' judgment can therefore be sustained, if at all, solely upon the theory that

the resolution or order of the Public Service Commission directing a refund of certain charges is a valid and binding adjudication.

[1] The power to make such an adjudication must be sought in the Public Service Commissions Law (chapter 48 of the Consolidated Laws). The sections pertinent to the questions now under consideration may be summarized as follows:

Section 28 requires common carriers to file with the Commission rates, fares, and charges for the transportation of persons and property and all rules and regulations which in any wise affect the value of the service.

Section 29 provides that, unless the Commission otherwise orders, no change shall be made in the rates, fares, or charges so filed, except after 30 days' notice.

Section 33 prohibits the transportation of property by the carrier until rates are filed with the Commission.

Section 34 provides that no common carrier shall permit any person or corporation to obtain transportation for any passenger or property between points within the state at less than the rates established and in force, in accordance with the schedules published and filed with the Commission, and prohibits any person from obtaining or seeking to obtain transportation for property at less than the rates contained in the schedules filed with the Commission.

Section 49 provides that whenever the Commission shall be of the opinion, after a hearing had upon its own motion or upon a complaint, that the rates, fares, or charges demanded or collected by a common carrier, or that the regulations or practices of such carrier are unjust, unreasonable, or discriminatory, or otherwise in violation of the provisions of the statute, the Commission shall determine the just and reasonable rates, fares, and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, and, if the regulations of the carrier are unjust or unreasonable, the Commission may determine the just and reasonable regulations to be observed by the carrier, and thereafter it shall be the duty of the carrier to obey such order as the Commission may make with respect to the reasonable rates to be charged in practices to be observed by the carrier in the future.

It is apparent that section 49 contains no specific authority to the Public Service Commission to make a valid adjudication that the carrier shall refund charges exacted in strict conformity with its filed schedule, but which the Commission deems to have been unreasonable. Everything in the section relating to what must be done by the carrier looks to the future. When the Commission shall have determined that a given rate is unreasonable or unjust, and shall have determined what is a just and reasonable rate, such rate or charge is thereafter to be observed and in force, and it is made the duty of the carrier thereafter to abide by such decision. It is sought to spell out authority for the adjudication as to the refund of past charges from the language of section 48 of the Public Service Commissions Law, but that section simply authorizes the Commission, in acting upon a charge against a common carrier, "to take such action, within its powers, as the facts justify." This still leaves it necessary to resort to other sections of

the act to ascertain what powers are given to the Commission, and we are able to find no provision which gives the Commission power to adjudge that the carrier shall refund past charges.

It is true that the Interstate Commerce Commission makes such orders, which the federal courts enforce and accept as adjudication of liability on the part of the carrier. But this is because the Interstate Commerce Act expressly authorizes such orders and makes them binding adjudications. Section 16 of that act provides in substance, that if, after a hearing of a complaint made as provided in section 13, the Interstate Commerce Commission shall determine that complainant is entitled to award of damages, the Commission shall make an order directing the carrier to pay the sum to which he is entitled on or before a day named, and if the carrier does not comply with such order, the complainant may bring an action in any court of general jurisdiction having jurisdiction of the parties to recover such damages, and that in such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated; that all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and a petition for the enforcement of the order for the payment of money shall be filed in the Circuit Court or state court within one year from the date of the order, and not after. U. S. Comp. St. 1913, § 8584.

[2] It is because of this section that the federal courts enforce orders of the Interstate Commerce Commission for the refund of charges, and not by reason of any supposed inherent or implied power in the Commission to make a binding adjudication. See N. Y. Central & H. R. R. R. Co. v. Murphy, supra. No similar or corresponding section is to be found in the Public Service Commissions Law, and its omission is most significant, as indicating that the Legislature deliberately and intentionally withheld such power from the Public Service Commission.

The judgment appealed from rests solely, as has been said, upon the supposed force and effect of the order or resolution of the Public Service Commission as a valid adjudication. It must therefore be reversed, and the complaint dismissed, with costs in all courts. Settle order on notice.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). I am of opinion that the judgment should be affirmed. The recovery is for the sum of $178 and interest, being the amount exacted by the defendant from the plaintiffs for track storage charges at Melrose Junction, New York City, between the 1st day of November, 1907, and the 20th day of May, 1910, for cars loaded with freight shipped from points within the state and consigned to the plaintiffs at Melrose Junction, for periods during which, owing to weather conditions, the defendant was not entitled to receive, and has refunded, demurrage charges for the use of the cars for which the track storage charges were made.

The issues in the action were submitted for decision on the plead-

ings and facts stipulated. It appears that during the period in question the defendant had on file with the Public Service Commission tariff regulations, presumably filed pursuant to the provisions of section 28 of the Public Service Commissions Law; that said tariff regulations by separate provisions prescribed per diem track storage charges for the use of the tracks by cars after a specified time for unloading, and per diem demurrage charges for the use of the cars during identically the same periods; but the demurrage regulations contained an exception to the effect that demurrage could not be charged "when the condition of the weather during the prescribed free time is such as to make it impossible to employ men or teams in unloading cars without serious injury to freight, when shipments are frozen, so as to prevent unloading during the prescribed free time, or when because of high water or snowdrifts it is impossible to get to cars for unloading during the prescribed free time." There was no similar exception in the track storage regulations. During the period in question the defendant charged the plaintiffs, and they paid, track storage charges aggregating $178 for the use of tracks for intrastate commerce contained in cars on which the defendant, pursuant to the provisions of the exception herein quoted, has refunded the demurrage charges.

In the month of May, 1911, the plaintiffs duly filed a complaint with the Public Service Commission, charging that the exaction of track storage charges by the defendant during the times when it was not entitled to demurrage charges on the same cars was unreasonable, unfair, and unjust, and praying, among other things, that the Commission determine that such charges were unreasonable, unfair, and unjust, and that it award reparation therefor. A complaint was also filed by the plaintiffs and others with the Interstate Commerce Commission with respect to like storage track charges on interstate commerce, and the Interstate Commerce Commission directed the defendant to incorporate in its tariff regulations an exception with respect to track storage charges identical with that with respect to demurrage charges; and this was done, both with respect to the tariff regulations filed with the Interstate Commerce Commission and those filed with the Public Service Commission, and the amended tariff regulations of the defendant in this regard, both with respect to interstate and intrastate commerce, took effect on the 1st day of August, 1911. The Interstate Commerce Commission also determined that the exaction of track storage charges for the periods when the defendant was not entitled to demurrage charges was unreasonable and unjust, and it required the defendant to make reparation; and pursuant to the order of the Interstate Commerce Commission, it has refunded to the plaintiffs such track storage charges on interstate commerce. N. Y. Cent. & Hud. Riv. R. R. Co. v. Murphy, 225 Fed. 407, —— C. C. A. —— (Law Journal, Sept. 15, 1915). The final action of the Public Service Commission on the complaint of the plaintiffs was not taken until the 5th day of December, 1912.

The defendant in the meantime having been compelled by the Interstate Commerce Commission to change its tariff regulations as

already stated with respect to interstate commerce, and having at the same time changed its tariff regulations with respect to intrastate commerce as already stated, it was necessary for the Public Service Commission to require a change in the tariff regulations of the defendant filed with it, as it was authorized by section 49 of the Public Service Commissions Law to do, and doubtless would have done, but for the action theretofore taken by the defendant in that regard. In these circumstances, the action of the Public Service Commission in disposing of the complaint took the form of a resolution reciting, among other things, the facts herein stated, and that the Commission had determined to follow the rule laid down by the Interstate Commerce Commission in similar proceedings; and it therefore resolved that the complainants, the plaintiffs herein, were entitled to recover from the respondent, the, defendant herein, the aggregate sum of $178, with varying amounts of interest computed at the rate of 6 per cent. per annum on the amounts and from the dates therein specified, "for and on account of exaction by respondent of unjust and unreasonable track storage charges applied to carloads of freight delivered to complainants at Melrose Junction," and that a copy of the resolution be served upon the complainants and respondent in that proceeding. The resolution was adopted by the unanimous vote of the three commissioners present. This action of the Public Service Commission was, in effect, although not strictly in form, a determination that the exaction of the track storage charges in question by the defendant was unjust and unreasonable, and constituted an order to the carrier to make restitution to plaintiffs for the unjust and unreasonable exaction of these track storage charges. It is manifest that the track storage charges and demurrage charges stood in the same category from an equitable standpoint. The defendant made no attempt to review the determination of the Public Service Commission in this matter, but it refused to comply therewith by making reparation as directed. This action was then brought, and the plaintiffs have recovered in accordance with the determination of the Public Service Commission with respect to the amount of the unjust and unreasonable exaction.

The learned counsel for the defendant contends that, since its tariff regulations imposed the track storage charges, it was its duty to exact them, and that the existence of the tariff regulations gives rise to a conclusive presumption that they were just and reasonable. Section 33 of the Public Service Commissions Law, it is true, prohibits a carrier from charging more or less than is prescribed by its tariff schedules duly filed with the Commission. These track storage charges were therefore properly exacted by the defendant; but it does not follow that it is entitled to hold them, for at that time the Public Service Commission had not approved defendant's tariff schedules, and when it came to consider them it determined that in this regard they were unreasonable and unjust. Thenceforth defendant had no authority for withholding the money. Section 26 of the Public Service Commissions Law provides, among other things, that:

"All charges made or demanded by any such corporation, person or common carrier for the transportation of passengers or property or for any service ren-

dered or to be rendered in connection therewith, as defined in section 2 of this chapter, shall be just and reasonable and not more than allowed by law or by order of the Commission having jurisdiction and made as authorized by this chapter. Every unjust or unreasonable charge made or demanded for any such service or transportation of passengers or property or in connection therewith or in excess of that allowed by law or by order of the Commission is prohibited."

As I construe the provisions of section 26, they prohibit, not only charges in excess of the amount allowed by law, which means the amount prescribed by the tariff regulations or schedules, but also charges which are unjust or unreasonable, even though they be in accordance with the tariff regulations or schedules which have not been approved by the Commission. Section 48 of the Public Service Commissions Law provides, among other things, as follows:

"Complaints may be made to the proper Commission by any person or corporation aggrieved, by petition or complaint in writing setting forth any thing or act done or omitted to be done by any common carrier, railroad corporation or street railroad corporation in violation, or claimed to be in violation, of any provision of law or of the terms and conditions of its franchise or charter or of any order of the Commission. Upon the presentation of such a complaint the Commission shall cause a copy thereof to be forwarded to the person or corporation complained of, which may be accompanied by an order, directed to such person or corporation, requiring that the matters complained of be satisfied, or that the charges be answered in writing within a time to be specified by the Commission. If the person or corporation complained of shall make reparation for any injury alleged and shall cease to commit, or to permit, the violation of law, franchise or order charged in the complaint, and shall notify the Commission of that fact before the time allowed for answer, the Commission need take no further action upon the charges. If, however, the charges contained in such petition be not thus satisfied, and it shall appear to the Commission that there are reasonable grounds therefor, it shall investigate such charges in such manner and by such means as it shall deem proper, and take such action within its powers as the facts justify.

"Whenever either Commission shall investigate any matter complained of by any person or corporation aggrieved by any act or omission of a common carrier, railroad corporation or street railroad corporation under this section it shall be its duty to make and file an order either dismissing the petition or complaint or directing the common carrier, railroad corporation or street railroad corporation complained of to satisfy the cause of complaint in whole or to the extent which the Commission may specify and require."

The provisions of section 49, to which reference has already been made, authorize the Commission, after a hearing upon its own motion or upon a complaint with respect to unjust or unreasonable charges, to determine the rates to be thereafter charged. It is manifest that the provisions of this section are to be read in the light of those contained in section 48, which provide who may make a complaint to the Public Service Commission and how it shall be made. I am of opinion that authority was conferred upon the Commission by the provisions of section 48 of the Public Service Commissions Law herein quoted to determine on the complaint of the plaintiffs whether the charges exacted by the defendant for track storage pursuant to its tariff regulations were just and reasonable, and upon the Commission's determining that the charges were unjust and unreasonable it was authorized to order the defendant to make reparation by refunding the amount exacted in excess of the amount found to be just

and reasonable. That is what the Commission undertook to do. The Public Service Commission is not given power to enforce its own decrees, but section 40 of the Public Service Commissions Law renders a carrier liable to the party aggrieved "for all loss, damage or injury" caused by or resulting from its failure to comply with an order ot the Commission. It seems to me that the Legislature plainly contemplated that the Commission might in such case, after determining that the charges exacted were unjust and unreasonable, require the carrier to make restitution, and that upon its failure to comply with the order of the Commission the plaintiffs were entitled to maintain this action to recover for the loss or damage they sustained thereby. It is plain, I think, that it was not intended that the court in such an action should determine the question as to whether the charges were just and reasonable, for, in the absence of a violation of some provision of constitutional law, tariff rates and regulations fall peculiarly within the province of the Legislature and its agent, the Public Service Commission. The determination of the Commission on those points, therefore, was properly taken as a basis for this action.

It is conceded that the Interstate Commerce Commission, under the Interstate Commerce Act, has jurisdiction, not only to require a reduction of charges prescribed in tariff regulations or schedules filed, but to require that the carrier refund unjust and unreasonable charges made in accordance with the tariff regulations or schedules; but it is claimed that such authority has not been conferred on the Public Service Commission. The Interstate Commerce Act had been enacted prior to the enactment of the Public Service Commissions Law, and it is fairly to be inferred that those who drafted the Public Service Commissions Law were familiar with its provisions. Many of the provisions of the Public Service Commissions Law are identical with those of the Interstate Commerce Act, and it is manifest that in the main the Interstate Commerce Act was followed in drafting the Public Service Commissions Law. On the points upon which this case depends, I think there is no difference, excepting immaterial differences in phraseology, between the provisions of the Interstate Commerce Act and those of the Public Service Commissions Law. Under each the tariff regulations or schedules are filed by the carrier in the first instance without approval by the Commission. Interstate Commerce Act, § 6 (4 U. S. Comp. Stat. 1913, § 8569, p. 3829); Public Service Commissions Law, § 28. Under each the carrier is required, while the schedules are in force, to exact charges in accordance therewith. Interstate Commerce Act, § 6 (4 U. S. Comp. Stat. 1913, § 8569, pp. 3830, 3831); Public Service Commissions Law, § 33. There is in the Interstate Commerce Act a provision corresponding to the provisions of section 26 of the Public Service Commissions Law, making all unjust and unreasonable charges imposed by the carrier illegal. Interstate Commerce Act, § 1 (4 U. S. Comp. Stat. 1913, § 8563, pp. 3818, 3819). Both acts contain somewhat similar provisions empowering the respective Commissions to entertain complaints and to award restitution. Interstate Commerce Act, §§ 13, 14, 16 (4 U. S. Comp. Stat. 1913, §§ 8581, 8582, 8584, pp. 3849, 3851, 3857, 3858);

Public Service Commissions Law, § 48. Section 14 of the Interstate Commerce Act contemplates that the Commission may award damages as a result of its determination with respect to a complaint filed, while section 48 of the Public Service Commissions Law provides that if "reparation" be not made, and cause therefor be shown, the Commission may make an order requiring the carrier to "satisfy the cause of complaint in whole or to the extent which the commission may specify and require." The phraseology of section 40 of the Public Service Commissions Law, giving a right of action against a carrier for its failure to comply with an order of the Commission, is quite similar to that of section 8 of the Interstate Commerce Act, giving a right of action. Interstate Commerce Act, § 8 (4 U. S. Comp. Stat. 1913, § 8572, p. 3838). Both acts are similar with respect to conferring authority on the respective Commissions to require a carrier to change its tariff regulations or schedules for the future. Interstate Commerce Act, § 15 (4 U. S. Comp. St. 1913, § 8583, p. 3852); Public Service Commissions Law, § 49.

Since it is conceded and appears to be well settled that the Interstate Commerce Commission is authorized to direct a refund of unjust and unreasonable charges, although imposed in accordance with tariff regulations or schedules in force at the time which it was the duty of the carrier to follow, I am of opinion that like authority is vested in the Public Service Commission, and that it was the duty of the defendant to comply with the order directing restitution. I therefore vote for affirmance.