[S. F. No. 11012.  In Bank.—November 5, 1924.]

SOUTHERN PACIFIC COMPANY (a Corporation) et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents, and Consolidated Cases.

[1] PUBLIC UTILITIES—EXCESSIVE OR DISCRIMINATORY RATES—AWARD OF REPARATIONS—JURISDICTION.—Before the establishment of federal and state regulatory bodies and commissions vested with powers to award reparation in cases where excessive or discriminatory rates are charged by public utilities there was no forum except the courts wherein the right to reparation by way of damages as against alleged excessive or discriminatory rates could be adjudicated.

[2] ID.—RAILROAD COMMISSION—JOINDER OF LEGISLATIVE AND JUDICIAL POWERS.—Upon the establishment of the commissions legislative and judicial powers were in some instances united in the same tribunal; and the Railroad Commission of this state is such a body.

[3] ID. — INTRASTATE SHIPMENTS — EXCESSIVE CHARGES — AWARD OF REPARATIONS BY RAILROAD COMMISSION—JUDICIAL FUNCTION.—The Railroad Commission in ordering railroad companies to make reparation to shippers on carload shipments of returned empty fruit and vegetable boxes between points in this state, for which unreasonable rates were charged and collected, was exercising a judicial function under section 71 of the Public Utilities Act.

[4] ID.—INTRASTATE SHIPMENTS DURING FEDERAL GUARANTY PERIOD —EXCESSIVE CHARGES — AWARD OF REPARATIONS BY RAILROAD COMMISSION—JURISDICTION—SECTION 208 (A) FEDERAL TRANSPORTATION ACT.—The Railroad Commission was not deprived of jurisdiction, by reason of section 208 (a) of the Federal Transportation Act (41 Stats. at Large, 464), which in effect prohibited the reduction of rates prior to September 1, 1920, unless such reduction was approved by the Interstate Commerce Commission, to order railroad companies to make reparation to shippers because of charges in excess of the then effective rates on carload shipments of returned empty fruit and vegetable boxes between points in this state during the period from March 1 to August 31, 1920, commonly referred to as the federal guaranty period, the

---

2.  See 4 Cal. Jur. 838.

4.  Validity, construction and effect of Transportation Act, notes, 10 A. L. R. 958; 11 A. L. R. 1451; 14 A. L. R. 234; 16 A. L. R. 1329; 19 A. L. R. 679.

order of reparation not constituting *pro tanto* a reduction of rates rendering the approval of the Interstate Commerce Commission unnecessary.

[5] ID.—FIXATION OF RATES—AWARD OF REPARATION—DISTINCTION.— There is a distinction between the power to fix rates and the power to award reparation. The former is a legislative function; the latter is judicial in its nature.

[6] ID.—FIXING AND REDUCING RATE—LEGISLATIVE FUNCTION.—The fixing of a rate in the first instance is prospective in its application and legislative in its character. Likewise the reducing of that rate would be prospective in its application and legislative in its character.

[7] ID.—SECTION 208 (A), FEDERAL TRANSPORTATION ACT—CONSTRUCTION OF.—The language of section 208 (a) of the Federal Transportation Act (41 Stats. at Large, 464) effected a prohibition against a reduction of rates during the so-called federal guaranty period, but there is nothing in the section operating as a prohibition against the exercise of judicial power in remedying past wrongs or inequalities.

[8] ID.—PURPOSE OF SECTION.—The purpose of section 208 (a) of the Federal Transportation Act was to maintain the general structure of rates established by the government during federal control and for such a time as would permit the carriers and the several regulatory agencies, both federal and state, to adjust themselves to the conditions resulting from the new control.

[9] ID.—AWARD OF REPARATION—CERTIORARI—REFERENCE TO REPORT OF CONGRESSIONAL COMMITTEE — INTENT OF STATUTE. — In a proceeding in *certiorari* to annul orders of the railroad commission requiring the payment of reparation because of charges in excess of existing rates on shipments made within this state during the so-called federal guaranty period, reference may properly be made to the report of the congressional committee which presented the bill for the purpose of ascertaining the intent of section 208 (a) of the Federal Transportation Act.

[10] ID. — TRANSFER OF JUDICIAL POWER TO COMMISSION — EFFECT UPON JURISDICTION TO AWARD REPARATION.—The fact that judicial power in the matter of awarding reparation in cases of charges of excessive or discriminatory rates has been transferred from the courts to the Railroad Commission does not deprive the latter of jurisdiction in such matter.

[11] ID.—REPARATIONS—CONTINUING JURISDICTION OF COMMISSION— EFFECT OF REGULARLY FILED SCHEDULE OF RATES.—In view of the fact that specific power is conferred upon the Railroad Commission to award reparation for the collection of excessive and discriminatory rates between points within the state, this authority

exists and continues, notwithstanding the rates alleged to be unreasonable are included in the schedule regularly filed with the Commission.

---

(1) 10 C. J., p. 502, sec. 808. (2) 10 C. J., p. 502, sec. 808. (3) 10 C. J., p. 502, sec. 808. (4) 10 C. J., p. 502, sec. 808. (5) 10 C. J., p. 407, sec. 627. (6) 10 C. J., p. 406, sec. 627. (7) 10 C. J., p. 502, sec. 808. (8) 10 C. J., p. 411, sec. 631 (1926 Anno.). (9) 36 Cyc., p. 1139. (10) 10 C. J., p. 502, sec. 808. (11) 10 C. J., p. 502, sec. 808.

PROCEEDING in Certiorari to annul orders of the Railroad Commission awarding reparation because of excessive rates. Petition denied; order to show cause discharged.

The facts are stated in the opinion of the court.

E. W. Camp for Petitioner Atchison, Topeka & Santa Fe Railway.

Stanley Moore for Petitioner Northwestern Pacific Railway.

James E. Lyons, Elmer Westlake and Henley C. Booth for Petitioner Southern Pacific Company.

Hugh Gordon and Carl I. Wheat for Respondent Railroad Commission.

Allan P. Matthew, McCutchen, Olney, Mannon & Greene for Respondents other than Railroad Commission.

SHENK, J.—This is a petition for a writ of review wherein it is sought to annul orders of the respondent Railroad Commission requiring the payment of reparation in twelve proceedings instituted before it. The issues in the several proceedings were the same and the cases were disposed of by one order of the Commission. By consent of the parties this court will also by a single order dispose of the entire group. Upon the filing of the petition an order to show cause why the writ should not be allowed was issued and the matter is submitted on the legal objections interposed to the issuance of the writ.

The complainants before the Commission were corporations and individuals engaged in the canning and packing of fruit and vegetables at various points in the state of California. In each case the complaint alleged that excessive, unjust, and unreasonable rates had been charged and collected by the petitioners on carload shipments of returned empty fruit and vegetable boxes between points in California during the period from March 1 to August 31, 1920, commonly referred to as the federal guaranty period. Motions to dismiss the complaints were made by the defendants therein, petitioners herein, on the ground that the Commission had no jurisdiction to award reparation on shipments that moved during the period named by reason of the provisions of section 208 (a) of the Federal Transportation Act (U. S. Comp. Stats., Ann. Supp. 1923, sec. 1007¼d). The Commission denied the motions to dismiss and heard the cases on the merits. After such hearing the Commission found and determined that the rates involved in the proceedings before it were unreasonable. Accordingly, an order was made authorizing and directing the petitioners to pay to the complainants as reparation amounts with interest equal to the difference between the charges paid and those that would have accrued on the basis of class E rates in effect at the time the movements took place, subject to a minimum charge of eight dollars per car.

There was evidence before the Commission on behalf of the complainants as to the specific shipments, the amount of charges paid and the amount of damages suffered for which reparation was claimed. It was there stipulated that the rates so charged and collected were unjust and unreasonable to the extent that they exceeded the class E rates in effect at the time the movements took place, and the record discloses that counsel for one of the defendants stated that if the question of jurisdiction were not involved the claims would have been paid without contest. It is asserted by the respondents in this proceeding and not denied by the petitioners that the rates collected were unreasonable and excessive and that if the relief ordered by the Railroad Commission be not accorded the shippers the latter are entirely without remedy.

[1] It is not disputed that before the establishment of federal and state regulatory bodies and commissions vested with powers to award reparation there was no forum except

194 Cal.—47

the courts wherein the right to reparation by way of damages as against alleged excessive or discriminatory rates could be adjudicated. The authority of the courts in such matters was recognized as falling within their general jurisdiction. [2] Upon the establishment of the commissions legislative and judicial powers were in some instances united in the same tribunal. (*Prentis et al.* v. *Atlantic Coast Line Co.*, 211 U. S. 210 [53 L. Ed. 150, 29 Sup. Ct. Rep. 67].) The Railroad Commission of California is such a body. [3] The judicial function was exercised in the cases involved herein by the respondent Commission under section 71 of the Public Utilities Act. (Stats. 1915, p. 164.) It is there provided that when complaint is made to the Commission concerning a rate for service furnished by a public utility and the Commission has found, after investigation, that the public utility has charged an excessive or discriminatory amount for such service the Commission may order the public utility to make due reparation to the complainant with interest from the date of collection. [4] The petitioners do not attack the general authority of the Commission to award reparation under that section, but contend that the authority of the Commission to proceed thereunder was suspended as to all complaints for excessive rates collected during the federal guaranty period by reason of the provisions of said section 208 (a) of the Federal Transportation Act, approved February 28, 1920 (41 Stats. at Large, 464), and which reads as follows: "All rates, fares and charges, and all classifications, regulations, and practices, in anywise changing, affecting, or determining any part of the aggregate of rates, fares, or charges, or the value of the service rendered, which, on February 29, 1920, are in effect on the lines of carriers subject to the interstate commerce act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; *but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare, or charge, unless such reduction or change is approved by the commission.*" The contention of the petitioners is based particularly on the portion of the section which we have italicized. It is conceded by respondents that the language thus emphasized

had the effect of prohibiting the state Commission from ex-
ercising its legislative power to reduce the rates in effect
February 29, 1920, until after September 1, 1920, but it is
insisted by petitioners that the action of the Commission in
awarding reparation based on claims arising during the
guaranty period is *pro tanto* a reduction of such rates, and
that as the approval of the Interstate Commerce Commis-
sion has not been obtained as to such reparation, the respond-
ent Commission is powerless to proceed with the adjudication
of such claims.   The contention cannot be sustained.   **[5]**
There is a distinction between the power to fix rates and the
power to award reparation.   The former is a legislative
function, the latter is judicial in its nature.   In commenting
on this distinction the supreme court of the United States
said in *Baer Bros. Mercantile Co.* v. *Denver & R. G. R. Co.,*
233 U. S. 479 [58 L. Ed. 1055, 34 Sup. Ct. Rep. 641]:
"But awarding reparation for the past and fixing rates for
the future involve the determination of matters essentially
different.   One is in its nature private and the other public.
One is made by the commission in its *quasi*-judicial capacity
to measure past injuries sustained by a private shipper;
the other, in its *quasi*-legislative capacity, to prevent
future injury to the public."   **[6]**   The fixing of a rate
in the first instance is prospective in its application and
legislative in its character.   Likewise the reducing of that
rate would be prospective in its application and legislative
in its character.   **[7]**   The language of section 208 (a) ef-
fected a prohibition against such a reduction of rates during
the period named, but there is nothing in the section oper-
ating as a prohibition against the exercise of judicial power
in remedying past wrongs or inequalities.   The distinction
between the two functions was also pointed out in the
earlier case of *Reagan* v. *Farmers' Loan & Trust Co.,* 154
U. S. 362 [38 L. Ed. 1014, 14 Sup. Ct. Rep. 1047], wherein
the court said at page 397: "It is doubtless true, as a
general proposition, that the formation of tariff charges
for the transportation by a common carrier of persons or
property is a legislative or administrative rather than a ju-
dicial function.   Yet it has always been recognized that, if
a carrier attempt to charge a shipper an unreasonable
sum, the courts had jurisdiction to inquire into that mat-
ter and to award to the shipper any amount exacted from

him in excess of a reasonable rate.'' (See, also, decision of supreme court of the United States in *Terminal R. R. Assn. of St. Louis et al.* v. *United States et al.,* 266 U. S. 17, 69 L. Ed. 1, 45 Sup. Ct. Rep. 5..) The interstate commerce commission recognized the same distinction in *Arlington Heights Fruit Exchange* v. *Southern Pac. Co.,* 45 I. C. C. 248, where it refused to consider an award of reparation as the equivalent of a reduction of rates and stated: ''For the future we are endeavoring to prevent a public wrong; as to the past we have to look only to the remedying of a private injury by awarding damages. (*Baer Bros. Mercantile Co.* v. *Denver & R. G. R. Co.,* 233 U. S. 479 [58 L. Ed. 1055, 34 Sup. Ct. Rep. 641].) The only effect of finding a rate attacked unreasonable or otherwise unlawful as to the past is to afford a basis upon which to predicate an award of damages.'' If Congress had intended to place a restriction upon the power of the courts or of the federal and state commissions to award reparation, language appropriate to the subject would have been employed. The purpose of the section is plain. **[8]** It was intended to maintain the general structure of rates established by the government during federal control and for such a time as would permit the carriers and the several regulatory agencies, both federal and state, to adjust themselves to the conditions resulting from the new control. The intention is clearly expressed in the report of the congressional committee in presenting the bill which later became the Transportation Act of 1920. Referring to the provision for continuing the rates in effect, the committee said: ''In view of the enormous increase in operating costs of carriers, due to the increased wages and costs of materials, restoration to former level would result in such enormous decrease in revenues as would render it utterly impossible, even for the stronger railroads, to meet operating expenses. By the insertion of the above section, the existing rates, fares, charges, etc., are to continue in force and effect until changed by or pursuant to authority of law; that is, until changed by the appropriate regulatory body.'' (House Report No. 456, 66 Congress, 1st Session.) **[9]** Reference may properly be made to that report for the purpose of ascertaining. the intent of the measure (*Duplex Co.* v. *Deering,* 254 U. S. 443, 474 [16 A. L. R. 196, 65 L. Ed. 349, 41 Sup. Ct. Rep. 172]). It is ap

parent that it was in the contemplation of Congress in pro-
viding for the continuance of federal control rates "until
changed by the appropriate regulatory body" that the main
body or structure of existing rates should continue until
re-established, increased, modified, or reduced by the gov-
ernmental agency having the power in the exercise of its
regulatory power to re-establish, increase, modify, or reduce
rates for prospective application. If the power of the
courts to award reparation had continued it would scarcely
be contended that the language of section 208 (a) is broad
enough to have ousted the courts of jurisdiction thereof.
Neither by express language nor by implication could it be
held to have done so. **[10]** The fact that such judicial
power has been transferred from the courts to the respond-
ent Commission cannot change the result. It has changed
the procedure, but it has not materially affected the remedy.

The rulings of the state commissions on the construction to
be given said section 208 (a) are not entirely in harmony but
most significant is the construction placed on the section by
the interstate commerce commission.   Under the Federal Con-
trol Act of March 21, 1918 (40 Stats. at Large, 451 [U. S.
Comp. Stats. 1918, sec. 1974a, p. 274; U. S. Comp. Stats. Ann.
Supp. 1919, secs. 3115¾a, 3115¾p]), the operations of the
carriers, both interstate and intrastate, were subject to the
sole jurisdiction of the federal government (*Northern Pac.
Ry. Co. et al.* v. *State of North Dakota*, 250 U. S. 135 [63
L. Ed. 897, 39 Sup. Ct. Rep. 502]).   Under paragraph (c)
of section 206 of the Transportation Act of 1920 (41 Stats.
at Large, 461 [U. S. Comp. Stats., Ann. Supp. 1923, sec.
1007¼cc]), the Interstate Commerce Commission was given
jurisdiction to entertain and adjudicate claims for repara-
tion arising during the period of federal control on account
of the collection by carriers of unjust and unreasonable
rates, both local and interstate.   Such jurisdiction con-
tinued and was exercised by the Commission as to both
interstate and intrastate reparation claims arising during
the period of federal control.   Thereafter the interstate
commerce commission retained and has continued to ex-
ercise jurisdiction to adjudicate reparation claims involv-
ing interstate shipments which moved during the federal
guaranty period.   The respondents have cited some twenty-
five of such cases beginning with *Oliphant-Johnson Coal Co.*

v. *Chicago & Eastern Illinois R. Co.*, 69 I. C. C. 1, and concluding with *McGowan Coffee Co.* v. *New Orleans Northwestern R. Co.*, 77 I. C. C. 385. Counsel for respondents assert that the Interstate Commerce Commission held originally that it had jurisdiction over claims for reparation upon intrastate shipments during the federal guaranty period. No cases to that effect are cited but the statement is not denied by the petitioners. Subsequently, however, the Interstate Commerce Commission reconsidered its powers in the premises and on April 18, 1922, announced a conference ruling "that section 208 (a) of the transportation act, 1920, does not authorize the commission to award reparation, or consent to an award of reparation made by a state commission, on intrastate shipments which moved during the guaranty period, March 1 to September 1, 1920." (The Traffic World, vol. XXIX, p. 866.) Deference to the attitude of the Interstate Commerce Commission doubtless was responsible for the conflicting rulings of some of the state commissions. For instance, in *Mutual Products Trading Co.* v. *Oregon-Washington R. & N. Co.*, P. U. R. 1922A, 161, the department of public works of the state of Washington held in November, 1921, that it had no jurisdiction over guaranty period intrastate reparation claims, remarking that "the complaint might properly be brought before the interstate commerce commission." Later in July, 1922, the same regulatory body in *Public Service Commission ex rel. Arlington Silver M. Co.* v. *Great Northern R. Co.*, P. U. R. 1922E, 391, assumed jurisdiction over such claims in view of the fact that the Interstate Commerce Commission had held that it had no jurisdiction to grant such reparation and stating: "Irrespective of our own views with reference to jurisdiction, we are of the opinion that shippers are entitled to present their claims to some forum where reparation may be awarded promptly and without unnecessary court expense." The respondent Commission originally held that it had no jurisdiction (*East Bay Water Co. et al.* v. *Southern Pac. Co.*, 20 C. R. C. 532; *W. P. Fuller & Co.* v. *Southern Pac. Co.*, 22 C. R. C. 521), on the theory that an award of reparation was tantamount to a reduction of rates. Later, in *California Packing Corp. et al.* v. *Southern Pac. Co. et al.*, 23 C. R. C. 502, one of the cases here involved, the Commission assumed and exercised jurisdiction on the ground

that the Interstate Commerce Commission had disclaimed jurisdiction in such matters and that the shippers would be without remedy except in the courts if it did not assert its jurisdiction under the Public Utilities Act. The Illinois commission in *In re Michigan Central R. Co.,* P. U. R. 1922E, 391, decided that it could authorize but not direct reparation to be made. In *Hydraulic-Press Brick Co. et al.* v. *Chicago & Eastern Illinois R. Co.,* P. U. R. 1922E, 382, the Public Service Commission of Indiana assumed jurisdiction and awarded reparation. It was there contended by the carrier that in view of the fact that the Interstate Commerce Commission had by its conference ruling of April, 1922, decided that it had no jurisdiction, therefore the state commission had no jurisdiction. The contention was rejected and it was said: ''The commission finds nothing in such conference ruling or in the transportation act of 1920 to indicate or suggest that a state commission could not order reparation during the guaranty period if it otherwise had jurisdiction.'' The Pennsylvania Public Service Commission took jurisdiction and awarded reparation upon local shipments of coal during the guaranty period (*New York & Pennsylvania Co.* v. *New York Cent. Ry. Co., et al.,* P. U. R. 1921E, 80.) The Wisconsin commission has decided that it was without jurisdiction (*Park Falls Lumber Co.* v. *Chicago, St. Paul, M. & O. R. Co.,* P. U. R. 1922E, 391), and the Missouri commission refused jurisdiction on the ground that the rates complained of were under said section 208 (a) subject to the sole control of the Interstate Commerce Commission (*Walsh Fire Clay Products* v. *Wabash R. Co.,* vol. 13, Mo. P. S. C. Rep. 29). We therefore have the Interstate Commerce Commission and the state commissions of Indiana, Pennsylvania, Washington, Illinois, and California holding in effect that the award of reparations is not a reduction of rates and the commissions of Wisconsin and Missouri holding that they had no jurisdiction. It may, therefore, be said that the weight of authority among the public bodies having the responsibility of enforcing the regulatory statutes and acting upon reparation claims is in support of the position of the respondents.

It is conceded by the petitioners that the commissions ordinarily have power to declare rates which have been duly filed to be unlawful and to make an order for the payment

of reparation. "But," say counsel, "here we have a tariff actually put in force by act of Congress in which it is provided that the rates during a given period shall not be reduced unless such reduction is approved by the Interstate Commerce Commission. Yet, we have an order of the state commission directing the carriers to pay reparation to certain shippers without the reduction in the rates having been approved by the Interstate Commerce Commission." The position of the petitioners may therefore be said to be this: The awarding of reparations involved herein is in reality a reduction in rates and cannot be accomplished without approval by the Interstate Commerce Commission; the Interstate Commerce Commission has no jurisdiction to approve the awards, therefore the respondents are not entitled to any relief. In other words, the petitioners are insisting that the award of the respondent Commission is ineffectual unless approved by the Interstate Commerce Commission. The latter has decided that it has no power to approve the award. Therefore, the award must fail because of the absence of an approval which in any event cannot be obtained. We cannot conclude that the situation of the parties is attended with such inconsistency. The attitude of the Interstate Commerce Commission would seem to be entirely correct. It has decided that it has no jurisdiction to make such an award obviously on the theory that it involves the exercise of a judicial function on the part of the state commission and does not amount to a reduction of rates. It has also concluded that it has no power to approve such an award also for the obvious reason that the award when made does not constitute a reduction in rates as contemplated by said section 208 (a). If it had considered that an award by a state commission would amount to a reduction in rates it undoubtedly would have assumed jurisdiction and be prepared to approve or disapprove such awards when called upon to do so. That commission has, in line with its ruling, denied its jurisdiction to award reparation on intrastate shipments moving during the guaranty period (*United Dredging Co.* v. *A. T. & S. F. Ry. Co.,* 78 I. C. C. 365; *National Petroleum Assn.* v. *Director-General, as Agent,* 78 I. C. C. 711; *Cannelton Sewer Pipe Co.* v. *Director-General, as Agent etc.,* 73 I. C. C. 27; *Crookston Gas Co.* v. *Great Northern R. Co.,* 81 I. C. C. 128).

The court cases cited by petitioners are of slight if any assistance as throwing light on the subject in controversy. The case of *Public Service Com.* v. *New York Cent. R. R. Co.*, 230 N. Y. 149 [14 A. L. R. 449, 129 N. E. 455], did not deal with the question of reparation but with the power of the commission to compel the carrier to file amended tariffs effective at the close of the guaranty period. In *Wasatch Coal Co.* v. *Baldwin*, 60 Utah, 397 [208 Pac. 1109], the question of whether or not the "long and short haul" provision of the state Public Utilities Act, which specified lower rates than the federal control rates, was suspended by section 208 (a) during the guaranty period. There had been no reduction of the federal control rates with the approval of the Interstate Commerce Commission or otherwise, and it was held that under such circumstances the state rates were in abeyance during the period referred to. The question of jurisdiction to award reparation was not discussed. In *Michigan Cent. R. Co.* v. *Michigan Public Utilities Com.*, 271 Fed. 319, it was held that section 208 (a) clearly intended that state statutes or regulations fixing intrastate rates which were suspended during federal control should not automatically be reinstated at the termination of such control. *Atlantic Coast Line Ry. Co.* v. *Railroad Commission of Georgia*, 281 Fed. 321, involved an order of the state commission directing the refund of a portion of an intrastate rate collected by the carrier. The rate collected was in accordance with a schedule filed on the last day of federal control on order of the director-general. The commission challenged the appropriateness and authenticity of the schedule as filed. It was claimed that a certain rate of $1.80 had been scheduled and that a rate of eighty cents was the legal rate. The reasonableness of the rate as filed was not involved and it was held that it was inappropriate for the state commission in the enforcement of rates to enter upon an investigation of the propriety of the act of filing or go behind the filing of the rates to ascertain their authenticity. The case of *Louisville & Nashville R. R.* v. *Maxwell*, 237 U. S. 94 [L. R. A. 1915E, 665, 59 L. Ed. 853, 35 Sup. Ct. Rep. 494], did not involve reparations nor did the inquiry concern the reasonableness of the rates. An intending passenger bought and paid for two round-trip tickets from Nashville to Salt Lake City. The agent of the rail-

road charged and collected from him a sum which was $58.30 less than the published tariff. The railroad company brought an action for the amount of the undercharge. It was held that the rate of the carrier duly filed was the only lawful charge; that shippers and carriers were charged with notice of it and they, as well as the carrier, must abide by it "unless it is found by the commission to be unreasonable." In no sense is the case an authority denying the right of reparation in a proper case.

Another group of cases is cited by petitioners in support of the contention that the rates involved herein were charged and collected in accordance with a schedule of rates lawfully on file with the respondent Commission; that they were the only lawful rates and therefore the respondent shippers would have no recourse by way of reparation. Brief reference will be made to them. In *Utah-Idaho Cent. Ry. Co.* v. *Public Utilities Commission of Utah* (Utah), 227 Pac. 1025, the plaintiff sought reparation before the commission, contending that it was entitled to a refund of the difference between the amount it had paid for electrical energy in accordance with rates which had been lawfully promulgated and the amount it was required to pay under subsequently and lawfully reduced rates. The commission ruled that it had no jurisdiction to entertain the claim under the Public Utilities Act of the state which limited the power of the commission to grant reparation to "an excessive or discriminatory amount . . . in excess of the schedules on file with the commission." The prior and higher rate paid by the plaintiff had been in accordance with the regularly filed schedule. The action of the commission was upheld following the former ruling of the court in *Jeremy Fuel & Grain Co.* v. *Public Utilities Com.* (Utah), 226 Pac. 456. The case of *State* v. *Missouri Pub. Service Com.* (Mo.), 259 S. W. 445, held that the Public Service Commission of Missouri was not vested with power to determine the "purely judicial" question involved in the claim for damages by a shipper arising out of an excessive freight rate. In *Santa Fe Gold & Copper Mining Co.* v. *Atchison, T. & S. F. Ry. Co.*, 21 N. M. 496 [155 Pac. 1093], it was decided that the state corporation commission of New Mexico was not authorized under the laws of that state to award reparation for past excessive and unreasonable charges for freight.

In *Murphy* v. *New York Cent. Ry. Co.*, 170 App. Div. 788 [156 N. Y. Supp. 49], it was held that the statute authorizing the Public Service Commission of New York to determine the reasonableness of rates charged by a carrier looks to the future only and that the commission had no authority to make a valid adjudication that a carrier refund charges exacted in accordance with its filed schedule, but which the commission deems to have been unreasonable. In *Texas & Pacific Ry. Co.* v. *Railroad Com.*, 137 La. 1059 [69 South. 837], it was held that the Railroad Commission of Louisiana had no authority under the law of that state to award, against the railroad company, damages alleged to have been sustained by a shipper by reason of the observance of a freight rate authorized by the commission but subsequently declared to be unreasonable. Similar power was found to be lacking in the Public Service Commission of West Virginia under the statute of that state. (*Wheeling Steel Corp.* v. *Public Service Com.*, 90 W. Va. 74 [110 S. E. 489]), and in the Railroad Commission of Mississippi (*E. L. Young Heading Co.* v. *Payne etc.*, 127 Miss. 48, 89 [South. 782]).

It will thus be seen that the cases cited by the petitioners in support of the contention last mentioned all turned upon the construction of the statutory grant of power or the lack of it. [11] They are not in point here for the reason that specific power is conferred upon the Railroad Commission of California to award reparation for the collection of excessive and discriminatory rates between points within the state. This authority exists and continues, notwithstanding the rates alleged to be unreasonable are included in the schedule regularly filed with the Commission.

The petition is denied and the order to show cause discharged.

Lawlor, J., Lennon, J., Waste, J., Richards, J., Myers, C. J., and Seawell, J., concurred.