[S. F. No. 15560. In Bank.—July 30, 1936.]

BERKELEY HIGH SCHOOL DISTRICT OF ALAMEDA COUNTY, Petitioner, v. ROGER E. COIT, as Treasurer, etc., et al., Respondents.

134

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and Agnes R. Polsdorfer, T. A. Westphal, Jr., and Cecil Mosbacher, Deputies District Attorney, for Petitioner.

John R. Ober for Respondents.

John O'Toole, City Attorney (San Francisco), George Herrington and Orrick, Palmer & Dahlquist, as *Amici Curiae* on Behalf of Respondents.

THE COURT.—A rehearing was granted in this case in order to consider further two problems of construction of the statute involved herein. Upon such consideration, we hereby adopt the following portions of our prior opinion as a correct determination of the other issues:

"In this proceeding the petitioner asks for a peremptory writ of mandate to compel respondents, the treasurer and auditor, respectively, of Alameda county, to countersign tax anticipation notes in the sum of $210,000. On September 24, 1935, following the procedure outlined in section 3719, Political Code (Stats. 1935, p. 1600, chap. 523), petitioner, by its governing board, voted a request for the issuance of said notes, respondents approved the request and the board of supervisors, by a 4/5th vote, ordered the notes to issue. Respondents thereupon refused to countersign them, questioning, upon various grounds the validity of said section 3719, and of the proceedings thereunder.

"Respondents contend that the petition seeks to compel them to sign tax anticipation notes issued to provide funds for the payment of obligations to be incurred during the current fiscal year, whereas section 3719 only authorizes the issuance of such notes for the payment of obligations already incurred during the current fiscal year. This contention is discussed at length in the case of *County of Los Angeles* v. *Legg*, Sac. No. 5018, today decided (5 Cal. (2d) 349 [55 Pac. (2d) 206]), and it is there held that the point must be overruled. The same decision may also be referred to as authority for the statement that issuance of the notes pursuant to said statute does not constitute the incurring of an indebtedness in violation of section 18, article XI, of the Constitution.

"The first objection of respondents, presented under subdivisions A, B, C and D of their brief, rests upon the condition prescribed for the authority to issue tax anticipation notes, as set out in said section 3719. Because the statute does not expressly base the authorization upon a declaration

of necessity by the legislative body charged with that duty, but requires that such notes may issue only when in fact the described funds 'shall be needed', respondents argue that the declaration of such necessity, when made, is not conclusive, but remains a subject for judicial inquiry. Respondents do not deny that the funds are needed, as the official declarations have stated. The resolutions and requests shown in the petition herein, and which it is admitted were duly adopted and made, are presumptive evidence of the facts therein declared. It is presumed that official duty has been regularly performed. We might close the argument here, and say that respondents are not justified in refusing to comply with the demand made upon them, merely because they fear that some one may at some time challenge the validity of the notes and offer to prove that the required conditions for their issuance did not exist. But since there seems to be an element of public welfare involved in having the question settled, we now carry the inquiry one step further.

██ ''The statute provides that such notes shall be issued only after the adoption by the board of supervisors of 'a resolution setting forth the necessity for such borrowing and stating the amount of income and revenue provided . . . for such school district for such current fiscal year'. But precedent to this resolution of the board of supervisors of the county, there must be a request of two-thirds of the governing board of the school district, approved by the auditor and treasurer of the county. It is conceded that the board of education, on behalf of the school district, made the request by resolution setting forth the necessity for such borrowing, and reciting therein the facts showing the need therefor. And this request was duly approved by the county treasurer and by the county auditor. The gist of the objection made by respondents is that the board of supervisors accepted the foregoing proceedings of the board of education, the treasurer, and the auditor, as sufficient proof of the facts, and did not make a separate and independent investigation into the records and affairs of the school district, before adopting its resolution of approval.

''Respondents admit that in proceedings of this nature, where a court finds that a thorough investigation of the necessary antecedent jurisdictional facts has been made by a board of supervisors, or other inferior legislative body, the

court will not disturb the findings made pursuant to such investigation. (*Spring Valley Water Works* v. *San Francisco*, 82 Cal. 286, 305 [22 Pac. 910, 1046, 16 Am. St. Rep. 116, 6 L. R. A. 756].) The stressed point here is that the necessary thorough investigation was not made.

"As outstanding authority for the proposition that the finding of a fact by an inferior legislative body is not conclusive as to the existence of the fact so found, we are referred to *San Christina* v. *San Francisco,* 167 Cal. 762 [141 Pac. 384, 52 L. R. A. (N. S.) 676]. The fact in issue there was the existence of a 'great necessity or emergency', sufficient to authorize a tax levy in excess of the 'dollar limit' prescribed by the city charter. It was held that the principle which accords the great dignity of conclusiveness to determinations of the general legislature is not applicable to the proceedings of inferior legislative bodies. We have no hesitation about approval of the ruling thus stated. Its application, however, must depend upon the difference which exists between extraordinary powers to be exercised, and the common power to exercise discretion in business administration. It is to this latter class that the present case should be referred. The borrowing of money by a county, or city, or school district, under the plan provided for by section 3719 of the Political Code, whereby the loan is to be repaid out of the tax collections already provided for, does not impose additional tax burdens, or increase the burden of public debt. The choice is between the issuance of interest-bearing treasury warrants, or the saving of interest charges by making these short-time loans. The decision thereon is a matter of discretion in the administration of ordinary public business. Primarily that decision is made, as it should be, by the governing body of the school district, with approval of the county treasurer and county auditor, subject to additional approval by the board of supervisors. The presentation to the board of supervisors of the prior proceedings, and the consideration thereof by the board of supervisors, in itself constitutes, in the ordinary course of things, a sufficient investigation. In the absence of fraud, or other official misconduct, the record thus made should be accepted as conclusive of the recited facts, and it is so accepted by this court for all purposes of this proceeding. ▪ Where the act of a local or subordinate legislative body is not only legislative but also is discretionary in

the required exercise of judgment, concerning a matter committed to its care, the courts 'cannot enter the board room . . . nor interfere at all with its action unless the board is exceeding its legislative powers, or its judgment or discretion is being fraudulently or corruptly exercised'. (*Nickerson* v. *San Bernardino County,* 179 Cal. 518 [177 Pac. 465].)

■ ''There is no merit in the contention that the petition for the writ is insufficient because it does not allege that petitioner has included in its budget a separately stated amount of anticipated disbursements to meet the interest on these tax anticipation notes. The argument is based upon an imagined state of facts not existing in the present case. The proposed borrowing is limited to $210,000, which is less than 25 per cent of the estimated revenue and income of the district for the current fiscal year. The suggestion that there might not be funds available to meet the interest on the notes, is foreign to the actual facts of the case.

■ ''Respondents next contend that said section 3719 is so ambiguous that it cannot be determined therefrom whether the county, or the school district is the borrower. We hold that as applied to the facts presented in this case, the borrower is the school district. The board of supervisors is the selected instrumentality through which the notes of the district are issued. There is no borrowing for the school district on the credit of the county, and there is no violation of article IV, section 31, of the state Constitution.

. . . . . . . . . . . .

■ ''Under point VII respondents contend that section 3719 is ambiguous and unenforceable in that it does not permit cities, counties, and school districts to borrow money on tax anticipation notes until after taxes are levied, thereby presumably limiting the payment of such notes to income received from taxes; but nevertheless it provides that such moneys are to be repaid not only out of taxes but also out of all other income and revenues of such public corporations. We think that the alleged ambiguity does not exist. The section does not require that the repayment of tax anticipation notes shall be made exclusively from taxes. It does require that they be repaid from the entire income and revenue provided for school purposes. This income and revenue in fact

includes grants from the state made in definite amounts in accordance with sections 4.790 to 4.950 of the School Code. This last mentioned provision of section 3719 is not in conflict with the prior provision of the section. Said point VII is without merit.

▮ "Finally it is contended (point VIII) that the resolution adopted by the board of supervisors is illegal and in violation of said section 3719, in so far as it provides that in the event that available funds are insufficient for the payment in full of all of the tax anticipation notes outstanding at the time of their due date, then any available funds of the high school district received at any time during the current fiscal year shall be applied *pro rata* to the payment of the principal and interest of the said outstanding notes. In support of the foregoing objection respondents say : ' The section provides however that notes issued prior to December 31 in any fiscal year shall be repaid not later than said December 31. Therefore, if the notes are not paid on their due date or at least on or before December 31, they become void and cease to constitute enforceable obligations of the district and the board of supervisors has no authority to provide that such notes shall be paid out of any moneys received subsequent to December 31 if for any reason the income and revenue received prior to December 31 by the high school district are insufficient to discharge all of the notes issued prior to that date.'

"In answer to the foregoing objection we think that the reply made by counsel for petitioner in their brief is complete and satisfactory. It reads as follows: 'An examination of said section 3719 relative to the provisions relating to the payment of notes issued under the section reveals that it provides that "the repayment of any sums so borrowed pursuant to the authority of this section shall constitute a first lien against the taxes, revenue and other income collected *during the fiscal year* in which said money was borrowed, and shall be repaid from the first moneys received from said taxes, revenue and income". It is clear from the above quotation that the notes are a first lien against not merely the taxes, revenue and other income collected during the first half of the fiscal year, but that the notes are a first lien against all such income collected during the entire fiscal year. In addition the notes are to be repaid

not out of moneys received during any part of the year, but ''from the first moneys received from said taxes, revenue and income''. All provisions of the statute should be construed together, and when this is done the intent of the legislature is clear. It is submitted that the intention of the legislature in enacting said section 3719 was that the notes should be paid not later than December 31 if sufficient moneys are received from taxes, revenue and income to meet the same, but that if said sources of revenue are not sufficient in amount, then in any event ''the repayment of any sum so borrowed pursuant to the authority of this section shall constitute a first lien and charge against the taxes, revenue and other income collected *during the fiscal year* in which said money was borrowed, and shall be repaid from the first moneys received from said taxes, revenue and income.'' (Italics ours.) In other words, if the notes are not paid on or before December 31 because the revenues of the school district are insufficient, then the notes are to be repaid from the first moneys received any time during the fiscal year. It is clear furthermore that there is no language in the said statute that would prohibit the payment of a note in default on or before December 31 at some future date during the fiscal year provided that additional moneys were received by the school district. The said provisions in the statute were unquestionably placed in the statute by the legislature so that all sums borrowed by the cities, counties and school districts during the first half of the fiscal year would first be met before the respective public corporations appropriated or spent such moneys for other purposes. These provisions of the statute providing for the repayment of the evidences of indebtedness in no way limit the funds that shall be used for this purpose to funds collected in the first half of the school year. Resolution No. 29200, therefore, is strictly in accordance with the provisions of section 3719 of the Political Code.' ''

The rehearing was granted by this court in order to decide two remaining questions: (1) In the event that borrowing takes place in the second half of the fiscal year, is it limited to 50 per cent of the anticipated income for the *remainder* of the fiscal year, or 50 per cent of such income for the entire year? (2) Where money is borrowed during the

first half of the fiscal year, and is then repaid, is the amount thus borrowed to be computed as part of the aggregate amount of loans authorized for the fiscal year?

■ With respect to the first question, it has been suggested that the only way in which the limitation of the statute can be carried out is to permit the borrowing of but 50 per cent of the anticipated income for the remainder of the year, computed at the time of borrowing. Hence, if no borrowing occurred in the first half of the fiscal year, the district, under this theory, could not in the second half of the year borrow 50 per cent of the total anticipated income for the year, for if it did, it would be borrowing more than 50 per cent, perhaps as much as 100 per cent, of the *remaining* anticipated income. To avoid this result it is argued that the borrowing power is only 50 per cent of what remains uncollected at the time of borrowing. But this means that if no borrowing occurred during the first half of the year, the limit for the second half would be but 25 per cent of the total year's income.

There is nothing in the statute which warrants this restrictive interpretation, and the purposes for which it was enacted would be thwarted by such a view. The only limitation which the statute makes expressly is 50 per cent of the year's income, and we cannot read into it any further restriction. It is said, however, that situations may arise in which the first half year's income and revenue, when collected, will be as high as 60 per cent of the total, so that but 40 per cent of the total year's income will remain uncollected, in which case, if the borrowing power extends to 50 per cent of the total, the district might in the second half of the fiscal year borrow more than 100 per cent of the remaining uncollected income, leaving an indebtedness at the end of the year, in direct contravention of the terms of the statute.

To this objection there are two answers. First, the statute clearly and continuously refers to "tax anticipation notes", and provides that they may be issued to raise funds for immediate requirements "before the receipt of income for such fiscal year sufficient to meet such payments", in an amount not to exceed 50 per cent of the estimated income provided for the year; and it further provides that they shall be repaid from the first moneys received from taxes,

revenues and income. It is finally provided: "It is the intention of this section that such loan shall be made solely for the purpose of anticipating receipt of income and shall be made solely upon the credit of income and revenue provided for the fiscal year in which said loans are made." The statute clearly indicates that the borrowing should never be in excess of anticipated income, because such borrowing would not anticipate receipt of income and would not be solely on the credit of expected income. The reasonable interpretation of this language is therefore that although the district may borrow at any time during the first or second half of the year, and at such time may borrow up to 50 per cent of the year's income, it may never borrow in excess of the *total* anticipated and uncollected revenue at the time of borrowing. The second answer is that this interpretation, indicated by the language of the statute, is in fact compelled by the provisions of the California Constitution, article XI, section 18, which limits the amount of indebtedness which may be incurred, without a two-thirds vote of the electors, to the income and revenue for the year. Notes issued in an amount beyond the total anticipated income for the balance of the year would not only cease to be tax anticipation notes, but would be void because violative of the maximum limit set by the Constitution. Hence we have, by virtue of the constitutional provision, a complete protection against an unwarranted and unreasonable extension of the 50 per cent limit specified in the statute. We therefore hold that the district may borrow up to 50 per cent of the estimated income for the entire year, provided that this amount does not exceed the total anticipated income at the time of borrowing.

 The second question may be illustrated by an example: Suppose the district has an estimated yearly income of $1,000,000. During the first half of the fiscal year it borrows $500,000, which it repays, as required by the statute, by December 31st. It has borrowed the entire 50 per cent of anticipated income, but it has paid back the whole amount. Has it exhausted its borrowing power, even though there remains uncollected the anticipated sum of $500,000, and there is no existing indebtedness?

Although there may not be any serious practical objection to permitting the full borrowing power to operate, once

prior loans are repaid, we are unable to find any authorization for such procedure in the statute. It gives the power to borrow "in an aggregate amount not to exceed fifty per cent of the estimated income and revenue provided for such current fiscal year". It does not say that the "outstanding indebtedness" shall never be more than 50 per cent, but limits the "aggregate amount" borrowed; and it is perfectly clear that money borrowed is part of that aggregate amount, though repaid. The plain language of the statute, therefore, is opposed to the construction urged by petitioner. Under its view, the district could borrow 50 per cent during the first half year, pay it back (as it must) by the end of the first half year, and then borrow up to 50 per cent during the second half year, with the result that during the year it would have borrowed 100 per cent of its income in anticipation thereof. The 50 per cent limitation would then be without meaning. If its sole purpose were to limit the borrowing to 50 per cent in *each half year,* there would be no necessity for stating the limitation, for it is expressly required that each half year's borrowing be repaid before the end of the period, and approximately 50 per cent of the year's income is collected each half year. The provision for a general 50 per cent limitation on borrowing can be interpreted only as a general limitation on the total borrowing for the year, and the district cannot, merely by reason of carrying out the statutory requirement of repayment of the first borrowing in December, borrow in excess of that limitation. If it could, then the statute would be interpreted as if giving the power to borrow "in an aggregate amount not to exceed 100 per cent" of the anticipated income. However necessary or desirable this full borrowing power may be, it can only be created by express statutory provision, and the present statute does not make such provision.

It follows that the present proceedings taken under the statute are valid, and the statute, as hereinabove interpreted, is enforceable. It is the duty of respondents to comply with the demand of petitioner that they countersign the tax anticipation notes as directed in the resolution of the board of supervisors.

Let the peremptory writ issue.