ASHBURN, Acting P. J.
 

 Petition brought by the members of the City Council of the City of Santa Barbara for writ of prohibition restraining further action of the Superior Court of the County of Santa Barbara upon a mandamus petition filed therein by Public Sanitation and Service, Inc., which seeks a judgment commanding the city council to grant to it higher rates for residential garbage collection service under an existing contract for the collection and disposal of refuse and rubble within said city. Such increase has been refused by the city council after several hearings upon petition therefor.
 

 The prayer of the petition for mandate is that a writ issue "commanding said Respondents to increase your Petitioner’s monthly rate for service to residences under said contract to such amount as the evidence heretofore presented to Respondents show your Petitioner to be entitled to, or to show cause before this Court at a specified time and place why Respondents have not done so, in which latter case your Petitioner prays that this Court exercise its independent judgment in the matter, fix the amount of such rate increase on the basis of evidence then to be presented.” Demurrer to the petition having been overruled the superior court issued an alternative writ of mandate directed to the city and the members of the city council commanding them to "grant to said Petitioner an increase in said residential rates in accordance with the petitions, audits and evidence heretofore presented and filed with you in support thereof,” or to show cause at a specified time why they have not done so.
 

 Upon application of the members of the city council this court granted an alternative writ of prohibition directing the lower court to desist and refrain from further proceedings in said mandamus action until further order of this court. To this writ respondent court made a return saying that it has complied therewith and will continue to do so until final determination of this court; respondent court has taken no further part in this proceeding. Although counsel for the real
 
 *392
 
 party in interest, Public Sanitation and Service, Inc., filed points and authorities in opposition to issuance of an alternative writ, said real party made no return to the writ but did appear through counsel upon oral argument and presented an argument against issuance of a peremptory. (For convenience we will refer to the real party in interest as respondent except where otherwise indicated.)
 

 In this posture of the case we proceed as if upon general demurrer to the petition for prohibition and accept as true all the factual allegations thereof. (See Code Civ. Proc., §§ 1105,1088,1094;
 
 Goldman
 
 v.
 
 Superior Court,
 
 124 Cal.App.2d 165,166 [268 P.2d 134].)
 

 Counsel for petitioners primarily argue for the position stated in paragraph IX of the prohibition petition: ‘‘That the city council has failed and refused to pass a law to change the rates for refuse collection on the ground, among others, that said matter is within its sound and exclusive legislative discretion and that the respondent court cannot constitutionally compel it to enact legislation. ”
 

 On February 9, 1956, after an award pursuant to competitive bidding, the city entered into a contract with W. C. Estes and Mary C. Estes, “the best and most responsible bidder” for collection and disposal of refuse and rubble within the city for a period-of 10 years from March 1, 1956. The contract was assigned to Public Sanitation and Service, Inc., on April 16, 1958, with the city’s consent. The contract requires payment to the city of a minimum annual amount of $20,000, “or a percentage not less than 5.1% of annual gross receipts, whichever amount is greater.” The agreement also requires the posting of a faithful performance bond of $20,000 covering, among others, the covenant of paragraph 1 of the section headed “Bates” : “For any services required to be performed under this contract Contractor shall not charge any amount in excess of the rates fixed hereunder until or unless such rate or rates are modified by action of the City Council, and amendment hereof.” The method of effecting any rate adjustment is prescribed in paragraphs 3 and 4 of the “Bates” section, as follows: “3. The Contractor may, at any time, petition the City Council for rate adjustments. Such petition shall be accompanied by and be based upon a certified audit of the Contractor’s operations and revenues for the period following original establishment or latest City review of rates, such audit to be at Contractor’s expense. The City Council shall authorize rate adjustments only on presentation of evi
 
 *393
 
 dence that such adjustments are essential to continued operation by the Contractor and a reasonable return on his investment under the contract. 4. The City Council may at anytime initiate rate review by requesting the Contractor to furnish information required to determine the necessity for rate increases or decreases.” These paragraphs are identical with corresponding paragraphs of Ordinance Number 2523 pursuant to which the contract was made.
 

 It should be emphasized that any adjustment of rate can be accomplished only by amendment of Ordinance Number 2523'—“modified by action of the City Council”—and amendment of the contract itself. That this calls for legislative action seems clear. “A legislative act is said to be one which predetermines what the law shall be for the regulation of future cases falling under its provisions, while a judicial act is a determination of what the law is in relation to some existing thing done or happened.”
 
 (Wulzen
 
 v.
 
 Board of Supervisors,
 
 101 Cal. 15, 24 [35 P. 353, 40 Am.St.Rep. 17].) The fixing or refixing of rates for a public service is legislative, or at least quasi legislative.
 
 (Southern Pacific Co.
 
 v.
 
 Railroad Com.,
 
 194 Cal. 734, 739 [231 P. 28];
 
 Ortega Co.
 
 v.
 
 Triay,
 
 260 U.S. 103, 110 [43 S.Ct. 44, 67 L.Ed. 153, 157] ;
 
 Home Teleph. & Teleg. Co.
 
 v.
 
 Los Angeles,
 
 211 U.S. 265, 271 [29 S.Ct. 50, 53 L.Ed. 176, 181-182]; 13 C.J.S. §275b), pp. 623-624.)
 
 [1]
 
 There is no constitutional requirement of a hearing in such proceedings.
 
 (Franchise Tax Board
 
 v.
 
 Superior Court,
 
 36 Cal.2d 538, 549 [225 P.2d 905].) “Where the proceedings are quasi legislative in character, a hearing of a judicial type is not required; a hearing allowed by legislative grace is not circumscribed by the restrictions applicable to judicial or quasi judicial adversary proceedings.”
 
 (Franchise Tax Board
 
 v.
 
 Superior Court, supra,
 
 p. 549.)
 

 Mere ascertainment of facts as a basis for legislation does not render the process judicial or anything less than quasi legislative.
 

 In
 
 Collins
 
 v.
 
 City & County of San Francisco,
 
 112 Cal.App.2d 719, 731 [247 P.2d 362], the key question was whether the board of supervisors acted administratively or legislatively in passing a salary standardization ordinance; this was held to
 
 *394
 
 be legislative and the court said, concerning the ascertainment of facts which must underlie any legislative or quasi legislative action: “Under section 151 the board exercises some legislative discretion as to the standardization process. Since the board has the power to reject the schedules submitted by the commission and to amend them, although it must then await additional data from the commission, it is obvious that the board exercises considerable discretion in the process. The factual determination of such difficult questions as ‘prevailing rates’ and ‘comparable service and working conditions,’ and ‘comparable training and experience,’ and what constitutes ‘consistent’ compensation, clearly involves a discretionary fact finding process, and is therefore legislative in character.
 
 (City and County of San Francisco
 
 v.
 
 Boyd,
 
 22 Cal.2d 685 [140 P.2d 666].)” In the cited case of Boyd the question was whether the fixing of wages “in accord with the generally prevailing rates of wages for like service and working conditions in private employment” was the exercise of a legislative function. (P. 689.) It was held that “[t]he determination whether proposed rates of compensation are in accord or in harmony with generally prevailing rates is within the discretion of the rate-making authority. The courts will not interfere with that determination unless the action is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.” (P. 690.)
 

 This language and similar expressions found in numerous other cases upholding interference with legislative action is directed toward the right to undo what the legislative or quasi legislative body has done, not toward directing it to perform an act which is prospective in operation. This observation applies to
 
 Maxwell
 
 v.
 
 City of Santa Rosa,
 
 53 Cal.2d 274, 277 [1 Cal.Rptr. 334, 347 P.2d 678] ;
 
 Lawrence
 
 v.
 
 City of Santa Rosa,
 
 53 Cal.2d 282 [1 Cal.Rptr. 339, 347 P.2d 683] ;
 
 Johnston
 
 v.
 
 City of Claremont,
 
 49 Cal.2d 826, 838 [323 P.2d 71] ;
 
 Berkeley High School Dist.
 
 v.
 
 Coit,
 
 7 Cal.2d 132, 137-138 [59 P.2d 992] ;
 
 Johnston
 
 v.
 
 Rapp,
 
 103 Cal.App.2d 202, 206 [229 P.2d 414] ;
 
 Peart
 
 v.
 
 Board of Supervisors,
 
 145 Cal. App.2d 8, 13 [301 P.2d 874];
 
 Orange County Water Dist.
 
 v.
 
 Bennett,
 
 156 Cal.App.2d 745, 750 [320 P.2d 536] ;
 
 Saks & Co.
 
 v.
 
 City of Beverly Hills,
 
 107 Cal.App.2d 260, 264 [237 P.2d 32] (disapproved in
 
 Fascination, Inc.
 
 v.
 
 Hoover,
 
 39 Cal.2d 260, 265 [246 P.2d 656]).
 

 The
 
 commanding of specific legislative action is beyond the power of the courts for it would violate the principle
 
 *395
 
 of division of powers of the three governmental departments. Upon the level of the Legislature itself the rule seems well established. (See annotations in 136 A.L.R. 677, and 153 A.L.R. 524.)
 

 Myers
 
 v.
 
 English,
 
 9 Cal. 341. Mandamus to compel state treasurer to pay certain salary warrants in the absence of an appropriation therefor. At page 349: “It is within the legitimate power of the judiciary, to declare the
 
 action
 
 of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of
 
 non-action.
 
 The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. It is a discretion specially confided by the Constitution to the body possessing the power of taxation. There may arise exigencies, in the progress of human affairs, when the first moneys in the treasury would be required for more pressing emergencies, and when it would be absolutely necessary to delay the ordinary appropriations for salaries. We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in some one.’’
 

 French
 
 v.
 
 Senate,
 
 146 Cal. 604 [80 P. 1031, 2 Ann.Gas. 756, 69 L.R.A. 556]. Mandamus to compel reinstatement of certain senators who had been expelled by action of the senate without hearing or opportunity to defend against charges. At page 606: “Even if we should give these allegations their fullest force in favor of the pleader, they do not make a ease justifying the interposition of this court. Under our form of government the judicial department has no power to revise even the most arbitrary and unfair action of the legislative department, or of either house thereof, taken in pursuance of the power committed exclusively to that department by the constitution. . . . There is no provision authorizing courts to control, direct, supervise, or forbid, the exercise by either house of the power to expel a member. These powers are functions of the legislative department, and therefore in the exercise of the power thus committed to it the senate is supreme. An attempt by this court to direct or control the legislature, or either house thereof, in the exercise of the power, would be an attempt to exercise legislative functions, which it is expressly forbidden to do.”
 

 
 *396
 
 Upon the municipal level the same rule obtains. The enactment, of an ordinance or performance of any other legislative or quasi legislative function is but the exercise, through delegation, of a part of the legislative power of the state. It cannot be controlled by the courts.
 

 Nickerson
 
 v.
 
 County of San Bernardino,
 
 179 Cal. 518, 522 [177 P. 465] : “When the legislature has committed to a municipal body the power to legislate on given subjects or has committed to it judgment or discretion as to matters upon which it is authorized to act, courts of equity have no power to interfere with such a body in the exercise of its legislative or discretionary functions. . . . All these matters were committed by the statute solely to the board, and their determination, involved both legislative action and the exercise of discretion, neither of which was subject to review or control of any court. Whether, in the exercise of legislative powers, a board acts wisely or unwisely is no concern of the courts.”
 

 Glide
 
 v.
 
 Superior Court,
 
 147 Cal. 21 [81 P. 225], is pertinent. The superior court enjoined the board of supervisors from acting upon a petition for formation of a reclamation district, holding that the court had power to determine whether lands were in fact reclaimed (p. 22). The Supreme Court granted prohibition against further proceedings by the lower court. It held that courts will not restrain political or legislative or governmental acts of a municipality when acting within the scope of its powers. At page 23 : “Courts of equity do interfere, and are justified in their interference, in cases where municipal corporations or inferior boards or tribunals are acting, or proposing to act, in excess of their jurisdiction and without authority. But, upon the other hand, such courts will not attempt to restrain the political or legislative or governmental acts of such corporations or boards when acting within the legitimate scope of their powers.” At page 24: “ ‘The true test in all such cases is as to the nature of the specific act in question, rather than as to the general functions and duties of the officers. If the act which it is sought to enjoin is executive instead of ministerial in its character, or if it involves the exercise of judgment and discretion upon the part of the officer as distinguished from a merely ministerial duty, its performance will not be prevented by injunction’. (Id. § 1326.) In
 
 Alpers
 
 v.
 
 San Francisco,
 
 32 Fed. 503, Mr. Justice Field, discussing the same matter, says: ‘ The same exemption from judicial interference applies to all legislative bodies, so far as their legislative discretion extends.
 
 *397
 
 Municipal corporations are the instrumentalities of the state for the more convenient administration of local affairs, and for that purpose are invested with certain legislative power. In the exercise of that power, upon the subjects submitted to their jurisdiction, they are as much beyond judicial interference as the legislature of the state. The courts cannot in the one ease forbid the passage of a law nor in the other the passage of a resolution, order, or ordinance. If, by either body the legislature or the board of supervisors, an unconstitutional act be passed, its enforcement may be arrested. The parties seeking to execute the invalid act can be reached by the courts, while the legislative body of the state, or of the municipality, in the exercise of its legislative discretion, is beyond their jurisdiction. The fact that in either case the legislative act threatened may be in disregard of constitutional restraints, and impair the obligation of a contract as alleged in this case, does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary.’
 
 Alpers
 
 v.
 
 San Francisco
 
 was reviewed and affirmed by the supreme court of the United States in the recent case of
 
 McChord
 
 v.
 
 Louisville,
 
 183 U.S. [483] 495 [22 S.Ct. 165,46 L.Ed. 289].”
 

 In
 
 Muchenberger
 
 v.
 
 City of Santa Monica,
 
 206 Cal. 635 [275 P. 803], a case involving primarily the validity of an agreement to fix the mean high tide line at a specific location, the lower court upheld the agreement and also required defendant Santa Monica Land Company to deed to the city and the city to accept the deed to certain groynes and an adjoining strip of land affording access to the beach. The latter portion of the judgment was reversed, the court saying, at page 646:
 
 ‘‘
 
 Courts of equity may, and sometimes do, interfere and enjoin the action of a municipal corporation acting or proposing to act in excess of jurisdiction and without authority. It has no authority to interfere with the legislative or governmental acts within the scope of the city’s authority.
 
 (Glide
 
 v.
 
 Superior Court,
 
 147 Cal. 21, 24 [81 P. 225].) The contention of the city is that the matter of acceptance of property is within the legislative discretion of the city council.” Adverting to the requirement of Civil Code, section 1158, that a grant to a political corporation for public purposes must have attached to it the consent of the grantee evidenced by resolution of acceptance, the court said, at page 647: “We question the
 
 *398
 
 power of the court to force the city council, in which the legislative power of the City of Santa Monica is vested by its charter, to pass any such resolution of acceptance. The acceptance of the strips of land and the groynes, and their subsequent maintenance by the city, are unquestionably powers of the municipality. (See
 
 Harbor Center Land Co.
 
 v.
 
 Council of Richmond,
 
 38 Cal.App. 315 [176 P. 50].)
 

 “We are of the view that, as to the conveyance directed to be made, a case for the intervention of the strong arm of equity was not made out. ’ ’
 

 Johnston
 
 v.
 
 Board of Supervisors,
 
 31 Cal.2d 66 [187 P.2d 686], reversed that feature of an injunction order which restrained the board of supervisors from publishing or taking further steps to effectuate a proposed ordinance “regulating the establishment, maintenance and operation of reduction plants.” At page 71 the court said: “The temporary restraining order was issued after action on the proposed ordinance was delayed by the motion for reconsideration. The temporary injunction pendente lite, by ordering the board of supervisors to refrain from either publishing the ordinance or taking any steps to bring such ordinance into effect, clearly interfered with the legislative action of the legislative body of the county. Regardless of whether the action of the board of supervisors would be valid, such an injunction is not the proper remedy in this ease.”
 

 Sladovich
 
 v.
 
 County of Fresno,
 
 158 Cal.App.2d 230, 242 [322 P.2d 565], was an action to have zoning of plaintiff’s property in R-A zone declared illegal and for judgment authorizing plaintiff to use his property for M-2 purposes. The judgment in effect directed “that the board of supervisors amend its ordinance by legislation to classify plaintiff’s property as M-2 zone” (p. 238). At page 241 the court said: “We therefore conclude that the court’s holding that plaintiff’s property could not be classified other than M-2 (Heavy Industrial Property) is not justified by the evidence, and it would be usurping the discretionary right of defendants to classify it in a less offensive category provided by said ordinance. The finding that the new area planning commission could not, by its study, classify the plaintiff’s property other than M-2, when considered in connection with other possible changes made or recommended to defendant board, is but a conclusion and usurps the legitimate exercise of the board’s power.
 
 (Jones
 
 v.
 
 City of Los Angeles,
 
 211 Cal. 304 [295 P. 14];
 
 Wilkins
 
 v.
 
 City of San Bernardino, supra,
 
 p. 337 [29
 
 *399
 
 Cal.2d 332 (175 P.2d 542)].) ” At page 243: “Accordingly, the order of mandate directed to said board to adopt a new ordinance and reclassify said property as M-2 was unauthorized.’’
 

 That the courts cannot review legislative action of a municipality is held in eases arising in other jurisdictions. For example,
 
 Beauregard
 
 v.
 
 Town Council,
 
 82 R.I. 244 [107 A.2d 283, 284]
 
 ; Siegl
 
 v.
 
 Town Council & Zoning Board of Review,
 
 75 R.I. 502 [67 A.2d 369, 370];
 
 Appeal of Common School Dists. Nos. 27, 20, 5 and 3,
 
 232 Minn. 342 [45 N.W.2d 657, 659] ;
 
 R.I. Home Builders
 
 v.
 
 Hunt,
 
 74 R.I. 255 [60 A.2d 496, 498];
 
 State
 
 ex rel.
 
 Croy
 
 v.
 
 City of Raytown
 
 (Mo.App.), 289 S.W.2d 153, 156;
 
 Parkplain Realty Corp.
 
 v.
 
 Town Board,
 
 137 N.Y.S.2d 474, 476;
 
 Leichter
 
 v.
 
 Barrett,
 
 208 Misc. 577 [144 N.Y.S.2d 309, 311] ;
 
 Birchwood Knolls
 
 v.
 
 Hunter,
 
 144 N.Y.S. 2d 606, 607;
 
 Weers
 
 v.
 
 Whiton,
 
 3 App.Div.2d 924 [162 N.Y.S. 2d 680] ;
 
 Pelham Jewish Center
 
 v.
 
 Board of Trustees,
 
 9 Misc.2d 564 [170 N.Y.S.2d 136, 138];
 
 Neddo
 
 v.
 
 Schrade,
 
 270 N.Y. 97 [200 N.E. 657, 658-659] ;
 
 Larkin Co.
 
 v.
 
 Schwab,
 
 242 N.Y. 330 [151 N.E. 637, 639].
 

 The following eases uphold the principle that a court cannot direct specific legislative action by the municipal authorities, viz.,
 
 Spano
 
 v.
 
 Close,
 
 266 App.Div. 1023 [44 N.Y.S.2d 888] ;
 
 Northwood Properties Co.
 
 v.
 
 Perkins,
 
 325 Mich. 419 [39 N.W. 2d 25, 27];
 
 Steers Sand & Gravel Corp.
 
 v.
 
 Village Board,
 
 129 N.Y.S.2d 403, 404;
 
 School Dist. of City of Pontiac
 
 v.
 
 City of Pontiac,
 
 262 Mich. 338 [247 N.W. 474, 479]. See also 16 C.J.S. § 151 (1)b, p. 725.
 

 In the Northwood Properties case,
 
 supra,
 
 the court said, at page 27: “While it is within the province of the courts to pass upon the validity of statutes and ordinances, courts may not legislate nor undertake to compel legislative bodies to do so one way or another. [Citations.] The court erred in seeking to compel the defendant mayor and city commission members to amend the ordinance.”
 

 In
 
 Steers Sand & Gravel Corp.
 
 v.
 
 Village Board, supra,
 
 it is stated at page 404: “Zoning is a legislative function. [Citations.] As legislators, the respondent Board is not subject to the control or direction of the court. [Citation.] Accordingly, this court has no power to direct it to call a new meeting for the purpose of voting on the petition or to direct a new hearing to be held.”
 

 The instant case presents an obstacle to judicial interference with councilmanic action which is not present in
 
 *400
 
 those above cited or discussed. We here have to deal with a court coerced amendment of both a contract and an ordinance. The city and respondent have specifically agreed that for a term of 10 years respondent may and shall collect all refuse and rubble in the city “and shall not charge any amount in excess of the rates set out herein.’’ The rate fixed for residential service was $1.75 per month (thereafter increased to $2.10 by amendment of March 27, 1958). The contract further specifies that “Contractor shall not charge any amount in excess of the rates fixed hereunder until or unless such rate or rates are modified by action of the City Council, and amendment hereof. ’ ’ This obligation of respondent is supported by a faithful performance bond. Unless and until the contract, as well as the ordinance, is amended the service must be performed at the same rate for 10 years. The method of procuring such amendment is set forth in paragraph 3 above quoted. The concluding sentence is: “ The City Council shall authorize rate adjustments only on presentation of evidence that such adjustments are essential to continued operation by the Contractor and a reasonable return on his investment under the contract.”
 

 Volume 12, McQuillin on Municipal Corporations (3d ed.), section 34.152, page 475: “An agreement between a municipality and a public service corporation as to rates to be enforced for a specified reasonable time will not be raised by mere implication, and where the meaning of a grant or contract in regard thereto is ambiguous or doubtful, it will be construed favorably to the rights of the public.”
 

 The clause under consideration clearly is a limitation upon the power of the council imposed for the benefit of the householders and others who must pay the rates, not a grant to the contractor of an affirmative right to an increase upon making the showing outlined in paragraph 3. The intention to place this deal upon a contractual basis is emphasized by the enabling Ordinance Number 2523, which says: ‘‘Such contract shall not be a franchise nor be deemed or construed as such.” It thus appears that respondent primarily seeks a court compelled amendment of a contract. The making of that contract operated as a suspension of the normal rate regulating power of the city council. A basic rule here comes into operation.
 

 “[T]here can be no question in this court as to the competency of a state legislature, unless prohibited by constitutional provisions, to authorize a municipal corporation to contract with a street railway company as to the rates of fare,
 
 *401
 
 and so to bind during the specified period any future common council from altering or in any way interfering with such contract. [Citations.] The contract once having been made, the power of the city over the subject, so far as altering the rates of fare or other matters properly involved in and being a part of the contract, is suspended for the period of the running of the contract.”
 
 (Detroit
 
 v.
 
 Detroit Citizens’ Street R. Co.,
 
 184 U.S. 368, 382 [22 S.Ct. 410, 46 L.Ed. 592, 606].) This principle has been recognized and applied in numerous federal and state decisions, among them,
 
 Home Teleph. & Teleg. Co.
 
 v.
 
 Los Angeles, supra,
 
 211 U.S. 265, 273 [29 S.Ct. 50, 53 L.Ed. 176,182];
 
 Vicksburg
 
 v.
 
 Vicksburg Water Works Co.,
 
 206 U.S. 496, 508, 516 [27 S.Ct. 762, 51 L.Ed. 1155, 1160, 1163] ;
 
 City of Seymour
 
 v.
 
 Texas Electric Service Co.
 
 (5 C.C.A.), 66 F.2d 814, 817;
 
 State
 
 v.
 
 Billings Gas Co.,
 
 55 Mont. 102 [173 P. 799, 800, 801]. Volume 12, McQuillin on Municipal Corporations (3d ed.), section 34.151, page 467, says: “The making of a contract between a municipality and a public service company, fixing the rates which may be charged consumers is, for the most part, the exercise of one of the business powers of the municipality. ... It is well settled that the state legislature may authorize a municipality to establish by contract the rates to be charged by a public service corporation for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. . . .” Of course the principle operates both ways. The city and the contractor are both bound by the specific terms of the contract. Without specific agreement of both parties a rate cannot be increased or diminished.
 

 In order to sustain the power of the superior court to order the city to grant to respondent an increased rate it is necessary for respondent to find authority to the effect that the city may be compelled by court decree to agree to and execute an amendment to its contract. Counsel have not cited or hinted at any such authority and we know of none. The case of
 
 Detroit
 
 v.
 
 Detroit Citizens’ Street R. Co., supra,
 
 and other cited authorities, plainly indicate the contrary. “Were the municipalities ... in the granting of the franchises involved in these cases, expressly vested at the time of the granting thereof with unlimited authority to contract with the grantee of such franchises on the subject of fixing the rates which might be charged for the services rendered the public thereunder during the whole of the franchise periods?
 

 
 *402
 
 “If so, because of article 1, section 10, of the Constitution of the United States, which prevents the impairment of the obligation of contracts, it is firmly settled that the rates as fixed in the franchises are irrevocable during the franchise periods, without the consent of the municipality, as well as of the holder of the franchise, to a change. [Citations.] ”
 
 (Virginia-Western Power Co.
 
 v.
 
 Commonwealth,
 
 125 Va. 469 [99 S.E. 723, 726, 9 A.L.R. 1148].)
 

 In
 
 Chrysler Light & Power Co.
 
 v.
 
 City of Belfield,
 
 58 N.D. 33 [224 N.W. 871, 875, 63 A.L.R. 1337], it is pertinently said: “The plaintiff having accepted the franchise, it also accepted the conditions, and it cannot ask to be relieved from its contract and that another be made in place thereof because it failed to make an advantageous bargain with the city. . . . Insofar as the franchise in question here stipulates a definite price at which the electric light company agrees to furnish electric current for lighting the streets of the city, it constitutes a contract between the city of Belfield and the plaintiff utility company. In making such contract the city was not acting as an agent of the state, but was acting for and in the interest of the city as a legal personality. [Citation.] In these circumstances the question whether the rates agreed upon by the plaintiff utility and the defendant city were then, or subsequently became confiscatory, is wholly immaterial. [Citations.] The contract so entered into is binding upon the parties thereto, and, so far as concerns the questions involved here, their respective rights and obligations are measured thereby.’’ Once that hurdle is passed it becomes necessary for respondent to sustain the court’s power to direct a specific amendment to the city ordinance, but that is contrary to the eases cited upon that point. We are persuaded that the court has no such jurisdiction.
 

 But counsel for respondent argue that the lower court in overruling the demurrer to the mandamus petition and issuing the alternative writ was merely exercising its general jurisdiction and cannot be prohibited from so doing. It is true, however, that when it issued the alternative writ calling upon the city council to “grant to said Petitioner an increase in said residential rates” it exceeded its jurisdiction and embarked upon a nonjurisdictional voyage. By failure to deny the following allegations of the instant petition for prohibition the court and the respondent have admitted an existing intention of the lower court to pursue a course which is in excess of its jurisdiction. We refer to these allegations: “In said memo
 
 *403
 
 randum of opinion, the court has in effect asserted that it does have the power to issue the writ to compel the city to enact the necessary legislation to increase the refuse collection rates’’; “That said court will . . . proceed to try the case of
 
 Public Sanitation and Service, Inc.
 
 v.
 
 the City Council of the City of Santa Barbara
 
 and render judgment against petitioner unless this court by its writ of prohibition shall otherwise order.’’
 

 If the cases relied upon by respondent were here applicable the necessity of prohibition would remain. That is to say, if this were a case where the court could interfere with the legislative action of the city its judgment would have to rest upon a showing of conduct amounting to fraud, or manifestly and grossly unjust in its result, or amounting to an abuse of discretion
 
 (Maxwell
 
 v.
 
 City of Santa Rosa, supra,
 
 53 Cal.2d 274, 277-278) or, as the matter is phrased in
 
 Berkeley High School Dist.
 
 v.
 
 Coit, supra,
 
 7 Cal.2d 132, 138, “its judgment or discretion is being fraudulently or corruptly exercised. ’ ’ The mandamus petition now under consideration does not measure up to any of these specifications.
 

 The pertinent provision of the ordinance and the contract permits a rate adjustment “only on presentation of evidence that such adjustments are essential to continued operation by the Contractor and a reasonable return on his investment under the contract.” The instant petition alleges, and the allegation is admitted, that respondent in connection with its three applications for an increased rate “at no time revealed what the investment of said company was or what a reasonable return on said investment would be.” The fact that the pleading below did not aver such disclosure or nondisclosure cannot affect the situation except as it shows the absence of an affirmative averment of a good cause of action for mandamus.
 

 The showing of arbitrary action which respondent claims to have made in its mandamus petition proves to be illusory because it rests upon a series of conclusionary allegations exemplified by the following: “Said petition for said rate increase was filed by your Petitioner upon the ground, as disclosed and reported in said petition and audit, that performance of said contract . . . had resulted in a financial loss of approximately $200,000.00 . . . and upon the ground, as disclosed and reported in said petition and audit, that the requested increase in rates was necessary to enable your Petitioner to operate and perform under said contract other than at a substantial loss”; “Said second petition for rate increase
 
 *404
 
 was filed by your Petitioner upon the ground, as disclosed and reported in said accompanying audit, that the performance of said contract . . . had resulted in a financial loss of aproximately $200,000.00 . . . and upon the ground, as disclosed and reported in said audit, that an increase in said rates was necessary to enable your Petitioner to operate and perform under said contract other than at a substantial
 
 loss”; ‘‘
 
 [Y] our Petitioner is informed and believes, and upon such information and belief alleges, that the report of said Head & Wahl concurred generally with the conclusions reached in said Giovanola, West & Murray audit to the effect that your Petitioner’s operations were being carried on at a loss”; “Said third petition for rate increase was filed by your Petitioner upon the ground, as disclosed and reported in said petition and accompanying audit”; “The action of the Respondents herein in denying your Petitioner’s petitions for a rate increase, as hereinbefore set forth, was arbitrary, capricious, unfair, and unreasonable, deprived your Petitioner of a fair trial, and constituted a prejudicial use of discretion on the part of Respondents in this: . . . [Y] our Petitioner presented evidence, supported by the audits hereinbefore referred to, that your Petitioner could not further operate under the present rate of said contract except at a substantial loss, despite every effort on the part of your Petitioner to curtail costs and expenses; that your Petitioner could not operate under the present rates of said contract so as to make a reasonable or any return on your Petitioner’s investment under said contract”; “At none of the hearings held by Respondents on your Petitioner’s various applications for rate increase was any evidence presented contrary to your Petitioner’s evidence”; “Despite the fact that all the evidence presented by your Petitioner to Respondents warranted and required an increase in rates under the terms of said contract and said City ordinance, Respondents refused to consider said evidence, and denied any increase in rates to your Petitioner in disregard of said evidence”; “but rather concerned themselves with other questions having no relevancy to the matter at hand”; “Respondents repeatedly attempted to coerce your Petitioner into either amending said existing contract in other particulars, or into abandoning said contract.”
 

 Attempt is made in said mandamus proceeding to invalidate the actions of the city council upon the ground of disqualification of two members through prejudice or other similar fact. The board consists of seven members and a dis
 
 *405
 
 qualification of two of them (assuming it to exist) would not under the authorities invalidate the action of the hoard. (See
 
 Nider
 
 v.
 
 Homan,
 
 32 Cal.App.2d 21, 24 [89 P.2d 135];
 
 Sladovich
 
 v.
 
 County of Fresno, supra,
 
 158 Cal.App.2d 230, 241.)
 

 Let the peremptory writ issue as prayed.
 

 Herndon, J., and Kincaid, J. pro tem.,
 
 *
 
 concurred.
 

 [1]
 

 The position taken by counsel for the real party in interest and by the trial judge that $ 1094.5, Code of Civil Procedure, is here applicable is erroneous, for that procedure does not pertain to quasi legislative determinations. (See
 
 Munns
 
 v.
 
 Stenman, 152
 
 Cal.App.2d 543, 556 [314 P.2d 67] ;
 
 Brock
 
 v.
 
 Superior Court,
 
 109 Cal.App.2d 594, 598 [241 P.2d 283].)
 

 *
 

 Assigned by Chairman o£ Judicial Council.