[Civ. No. 15540. Fourth Dist., Div. Two. June 16, 1976.]

ORANGE COUNTY CABLE COMMUNICATIONS COMPANY, Plaintiff and Appellant, v.
CITY OF SAN CLEMENTE et al., Defendants and Respondents.

166

---

**COUNSEL**

Burke, Williams & Sorensen and Richard R. Terzian for Plaintiff and Appellant.

Gerold G. Williams and William R. MacDougall for Defendants and Respondents.

## Opinion

## McDANIEL, J.—

### Introduction

The action in the trial court sought a writ of mandate on behalf of a cable television franchisee of the City of San Clemente ("City") to compel the City to raise the rates which the franchisee could charge subscribers for its cable TV service. The trial court denied the petition, and the appeal is from the judgment which was entered on such denial. The trial court correctly resolved all issues before it, and so we affirm the judgment.

### Facts

On June 1, 1966, the City Council of San Clemente adopted an ordinance which provided for the granting of franchises for community antenna television systems (CATV). That ordinance covered a number of things, including the duration of the franchise, franchise payments, limitations of the franchise, and operational standards. The ordinance also stated "The grantee may make a charge to subscribers for installation or connection to its CATV system and a fixed monthly charge as filed and approved as herein provided. *No increase in the rates and charges to subscribers, as set forth in the schedule filed and approved with grantee's application, may be made without the prior approval of the Council expressed by resolution.*" (Italics added.)

On August 3, 1966, the city council adopted an ordinance granting a cable television franchise to San Clemente TV Cable Company, a division of the Co-Axial Systems Engineering Company. The franchise was for a term of 10 years. The charge for cable service was set at $4.50 per month, and $1 per month for each additional television unit in any private or single commercial unit.

About two years later, the city council approved the assignment of this CATV franchise to the Times Mirror Company. As a condition of the council's approval, Times Mirror was bound "by each and every term, covenant and condition of said original CATV franchise and any and all rules and regulations of City therein and thereto set forth or incumbent upon SAN CLEMENTE CABLE TV or TIMES, or its or their predecessors in interest."

In May 1970, the city council approved a request from the San Clemente TV Cable Company[1] for an increase in its monthly service rates from $4.50 to $5.50, and its additional unit monthly charge from $1.00 to $1.50.

One year later the Times Mirror Company sought and obtained the city council's approval to assign the franchise to the Orange County Cable Communications Company (appellant herein). This approval was also on condition that the successor franchisee be bound by the terms and conditions of the original franchise.

In October 1973, the city council approved the appellant's request for an increase in installation and reconnection charges. However, a later request for an increase in the monthly service rates was denied.

The unsuccessful effort to obtain an increase in monthly service rates occurred at a city council meeting on June 5, 1974. At that meeting appellant presented written material and testimony by a so-called rate expert and appellant's director of revenue and service requirements to support its position that an increase in service rates was both needed and justified. A discussion then followed during which members of the audience were invited to participate. One person presented a letter in which he suggested that any rate increase should, at the very least, be postponed until new financial data pertaining to the operation of the system *solely* within the City was presented to the city council.[2] Appellant's witnesses admitted that the cost figures presented did take into account service to areas outside of San Clemente.

Further discussion followed, and then the city attorney was directed to prepare a resolution denying the request for a monthly service rate increase. The vote on this resolution was not taken by the city council until its meeting of July 3, 1974; at that time the request for a rate increase was denied on the votes of Councilmen DiGiovanni, Holmes, Lane, and Presley. Councilman O'Keefe was absent.

As a result of the city council's action, appellant filed an action in the United States District Court for the Central District of California in

[1]Although the franchise had been assigned to the Times Mirror Company, the name of the cable television company was unaltered.

[2]San Clemente Cablevision operates in San Clemente, the county area contiguous to San Clemente, Aegean Hills, San Juan Capistrano, Camp Pendleton and the county area contiguous to Tustin.

which it sought a preliminary injunction to restrain defendants from enforcing their action which denied appellant a rate increase. Judge Whelan of that court issued a memorandum decision in which he turned down the request for a preliminary injunction. However, this denial was not based on the merits of the case. Rather, the court was concerned about severe limitations it saw placed on federal jurisdiction by the Johnson Act. (28 U.S.C. § 1342.[3]) Judge Whelan determined that cable television service in California is a public utility and, therefore, within the jurisdiction of the California Public Utilities Commission. Consequently, he ruled that 28 United States Code section 1342 barred the United States District Court from hearing the case.

Appellant thereupon dismissed the federal action without prejudice pursuant to a stipulation with the respondents and then filed a petition for a writ of mandate and other relief in the Orange County Superior Court. That court denied the appellant's petition, and the appeal is from the judgment entered upon the denial.

### Issues, Discussion and Disposition

Appellant's position is that six issues are presented on this appeal. The respondents appear to concur and suggest that there are two more involved. We do not agree with the parties' characterization of the appeal. Concisely summarized, what we find presented by the record is the following. The City adopted an ordinance providing for award of a CATV franchise to San Clemente TV Cable Company. Thereafter, the appellant, through mesne assignments, succeeded to the position of franchisee. It then sought the City's approval of a rate increase which the City refused to give, although the City had approved an earlier request.

As a result of these happenings, appellant contends that it has been deprived of property without due process of law or just compensation, contending further that the present rates are "confiscatory." Appellant argues that it has a "constitutional right" to a just and reasonable return

---

[3] 28 United States Code section 1342 provides:

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

"(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

"(2) The order does not interfere with interstate commerce; and,

"(3) The order has been made after reasonable notice and hearing; and,

"(4) A plain, speedy and efficient remedy may be had in the courts of such State."

on its investment. It claims the City acted "wilfully, arbitrarily [and] capriciously" and that the City further violated the covenant of good faith and fair dealing "inherent in the franchise." Otherwise, appellant argues that there was a failure to make adequate findings, and that this was violative of constitutional procedural due process. Finally, appellant contends that the trial court failed to make findings based on the evidence before it and that it misconstrued "the nature of the applicable law."

In our view, there are none of the constitutional issues present as urged by the appellant. Particularly, we find specious the argument that appellant has a *constitutional right* to a just and reasonable return on its investment. No authority is cited for this proposition.

■ The starting point for our analysis of the case is the holding that in this state cable television service is not a public utility. (*Television Transmission* v. *Public Util. Com.*, 47 Cal.2d 82, 89 [301 P.2d 862]; see also Pub. Util. Code, § 216.[4]) The holding in the *Television Transmission* case could not be more conclusive in terms of the context of decision. At the instance of subscribers to the CATV service in a certain area of Contra Costa County, the Public Utilities Commission had held a hearing which led to an interim order requiring the CATV operator to make a detailed survey of its facilities, submit a written report setting forth criteria for establishing reasonable standards of service, and directing that further hearings be had to receive evidence relating to the adequacy of such service. The CATV operator sought a review of these orders by the Supreme Court, and that court annulled them. Justice Traynor, writing for a unanimous court, observed: "Unless petitioner is a public utility, as defined in the Constitution or the Public Utilities Code, the commission was without power to issue the orders in question." (*Id.,* at p. 84.) At the conclusion of the opinion he said, "Since petitioner is not a telephone corporation or within any other class of public utility

---

[4]Public Utilities Code section 216 provides in part as follows: "(a) 'Public utility' includes every common carrier, toll bridge corporation, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, sewer system corporation, wharfinger, warehouseman, and heat corporation, where the service is performed for or the commodity delivered to the public or any portion thereof."

In interpreting this provision, the Supreme Court declared, "Although 'includes' is ordinarily not a word of limitation [citation], a legislative declaration that 'public utility' includes those performing certain enumerated services is not a declaration that those performing other services, not encompassed by the services enumerated, are public utilities." (*Television Transmission* v. *Public Util. Com., supra,* 47 Cal.2d 82, 85.)

enumerated in section 216, subdivision (a) of the Public Utilities Code, the commission had no jurisdiction to issue the orders in question." (*Id.,* at p. 89.)

Accordingly, if appellant is not a public utility, the only possible relationship of the parties is one based on contract. Appellant itself conceded as much by citing cases which characterized the relationship as such (e.g., *Los Angeles Ry. Co.* v. *Los Angeles,* 152 Cal. 242 [92 P. 490]), including two out-of-state cases which actually involved cable television franchises (*City of Owensboro* v. *Top Vision Cable Co. of Ky.* (Ky. 1972) 487 S.W.2d 283; *Bush* v. *Upper Valley Telecable Co.,* 96 Idaho 83 [524 P.2d 1055]).

Otherwise, the city council, in choosing to award a franchise, was clearly acting in a legislative capacity. (*Pacific Rock etc. Co.* v. *City of Upland,* 67 Cal.2d 666, 668 [63 Cal.Rptr. 572, 433 P.2d 476]; *Monarch Cablevision, Inc.* v. *City Council,* 239 Cal.App.2d 206, 210 [48 Cal.Rptr. 550].) Moreover, having once granted the franchise, the city council, in acting to grant or deny a request for a rate increase, continued to act in its legislative capacity. (*City Council* v. *Superior Court,* 179 Cal.App.2d 389, 393 [3 Cal.Rptr. 796].) As observed in the case just cited, " 'A legislative act is said to be one which predetermines what the law shall be for the regulation of future cases falling under its provisions, while a judicial act is a determination of what the law is in relation to some existing thing done or happened.' [Citation.]" (*Id.,* at p. 393.) With this the circumstance, appellant's contentions about due process, whether substantive or procedural, are decidedly inapplicable. Actually, there was no constitutional requirement that there even be an evidentiary hearing in the course of the City's consideration of the request for a rate increase. ■ Again, as noted in *City Council* v. *Superior Court, supra,* 179 Cal.App.2d 389, 393, " 'Where the proceedings are quasi legislative in character, a hearing of a judicial type is not required; a hearing allowed by legislative grace is not circumscribed by the restrictions applicable to judicial or quasi judicial adversary proceedings.' [Citation.]"

■ This brings our evaluation of the case back to the record, particularly the findings. The appellant's petition to the trial court alleged that the franchise "constitutes a contract between Plaintiff [*sic*] and City in which is implied a covenant of good faith and fair dealing by which neither party may deprive the other of the benefits of the

contract." The petition further alleged, that "said covenant of good faith and fair dealing is applicable to Respondent's power to determine charges for the services provided by Petitioner." The trial court found both of these allegations to be true. Actually, City admitted the former, i.e., that the franchise carried an implied covenant of good faith and fair dealing by which neither party may deprive the other of the benefits of the contract. However, somewhat inconsistently, City denied that the covenant of good faith and fair dealing applied to its power to approve the charges to be made for the franchisee's services. Be that as it may, the trial court, whether treating it as a factual or legal matter, determined that such covenant was applicable to the city council's consideration of the request for a rate increase.

In its rulings on the point the trial court was soundly obedient to precedent. The raising of the implied covenant noted is permissible even in transactions to which public bodies are parties. (*San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Mun. Water Dist.,* 236 Cal.App.2d 238, 257 [45 Cal.Rptr. 793].) █ Furthermore, where a contract confers upon one party a discretionary power affecting the rights of the other, including the power to fix rates, a duty arises upon the party with the discretionary power to exercise it in good faith. (*Cal. Lettuce Growers* v. *Union Sugar Co.,* 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

█ With these the guidelines to be applied, the next step of the analysis is to scrutinize what happened and determine if the City acted in bad faith. Our switch to the term "bad faith" is deliberate. While we hold that the contractual duty of the City was to act in good faith, the burden of the pleader and the requirements of proof are necessarily to show bad faith. In other words, the appellant's burden of proving a breach of duty to act in good faith logically imports the requirement of affirmatively proving bad faith.

Once again we find the appellant's position untenable. Without benefit of cited authority, it insists that the whole body of rate-making cases decided in the public utility area should provide the criteria for proving the bad faith of the City. We reject this approach, for, as already observed, the City was here engaged in the exercise of legislative power and *not the quasi-judicial function of public utility rate making.*

Here, we see appellant as misconstruing the context in which it was making the request for a rate increase. In its brief, there is an extended analysis of the hearing on June 5, 1974, in terms of a judicial proceeding, with emphasis on the evidence offered in support of the need for a rate increase and the absence of evidence in opposition thereto. In other words, we are asked by appellant to make an evaluation of the *evidence offered at the hearing* and, based upon such evidence, to decide whether it demonstrated the need for an increase in rates and, if it did, to use this as a measure of the City's bad faith. We do not see the distillate of such an analysis, even if we chose to make it, as providing an answer to the question of whether the City acted in bad faith. Neither did the trial court.

In the final analysis, this is an evidence case, and referring to the guidelines noted, the pivotal evidentiary issue is solely whether the City acted in bad faith. As noted, appellant's argument seems to boil down to a contention that the only evidence necessary to show bad faith is the extrinsic fact, in the face of all the evidence offered by appellant at the June 5, 1974, meeting, that the request for an increase was turned down. However, the trial court made a specific finding that "Respondent acted in good faith and dealt fairly with respect to rates of petitioner." As we read the record, what seems to have happened in the trial court was tantamount in effect to granting a defendant's motion for judgment (had it been made) under section 631.8 of the Code of Civil Procedure. In other words, it was apparently the trial court's view that the appellant had simply failed to carry the burden of proof on the bad faith issue, for the City offered no evidence at the hearing of the petition for a writ of mandate.

Because we have concluded that the only limitation upon the City Council was that its members act in good faith, then the crucial inquiry to be made is whether there is any evidence to support the trial court's finding that the City did act in good faith. In pursuing this inquiry, we are constrained to observe that the appellant pointed to no evidence of bad faith whatsoever. It is the appellant's duty to show wherein the evidence does not support the findings. (*Industrial Indem. Co. v. Golden State Co.,* 117 Cal.App.2d 519, 538 [256 P.2d 677].) This the appellant here has failed to do. Actually, as we read the record, there was no evidence at all offered to the trial court on the issue of the City's alleged bad faith. Aside from all the accounting data and the opinions of appellant's witnesses presented to the city council, all we see in terms of

behavior by the city council is that an earlier request for a rate increase was approved and that the latest one was turned down.

Keeping in mind that the appellant is not a public utility, that the relationship of the parties is contractual, that the City was operating in the area of its legislative power, and that the only constraint upon the City was to act in good faith, it is impossible for us to see how the trial court, on the basis of the evidence (or rather lack of evidence) before it, could have arrived at any other result than it did.

Before concluding, we note appellant's contention that the City acted "wilfully, arbitrarily [and] capriciously" in denying the request for a rate increase. To the extent that this represents a contention different than the contention that the City did not act in good faith, it is answer enough to such further contention that the only evidence offered by appellant was in the area of financially justifying the need for a rate increase. In our view, the simple action of denial of the request in the face of appellant's presentation to the city council is not evidence that the City acted wilfully, arbitrarily and capriciously, with the result that, as to this contention, the appellant failed to carry its burden of proof of one of the affirmative allegations of its petition.

The foregoing analysis disposes of the other contentions of appellant (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 223, p. 4212), and the judgment is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied July 13, 1976, and appellant's petition for a hearing by the Supreme Court was denied August 26, 1976.